**UNITED STATES of America, Appellee,**

v.

**Burton A. LIBRACH, Appellant.**

**No. 76–1060.**

United States Court of Appeals,
Eighth Circuit.

Submitted May 10, 1976.

Decided June 17, 1976.

Rehearing and Rehearing En Banc
Denied July 9, 1976.

Alan C. Kohn and Mark J. Bremer, St. Louis, Mo., and Mark Hirschfeld, Clayton, Mo., for appellant.

Donald J. Stohr (former U. S. Atty.) and Barry A. Short (former Asst. U. S. Atty.) (argued), and David W. Harlan, Asst. U. S. Atty., St. Louis, Mo., on brief, for appellee.

Before VOGEL, Senior Circuit Judge, and HEANEY and HENLEY, Circuit Judges.

HEANEY, Circuit Judge.

Burton A. Librach was charged in a two-count indictment with filing a false claim and using a false document to obtain an urban renewal relocation payment of $9,700 from the Department of Housing and Urban Development in violation of 18 U.S.C. § 1001. After trial to a jury, he was found guilty. The judgment of conviction was, however, reversed by this Court because the government suppressed, contrary to the dictates of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), evidence that was both favorable and material to the defense. *United States v. Librach,* 520 F.2d 550 (8th Cir.1975). Upon retrial, Librach was again found guilty by a jury of the crimes charged. We affirm the judgment of conviction.

I.

The principal witness for the government was an accomplice, Robert Fowler.[1] It is argued by the appellant that Fowler's testimony should have been suppressed because it was induced by an improper grant of

1. A more complete recital of the facts can be found in *United States v. Librach,* 520 F.2d 550 (8th Cir.1975).

immunity and by illegal payments of money.

### A.

Fowler testified after receiving from the government a promise that he would not be prosecuted for those offenses known to have been committed by him in the Eastern District of Missouri. The agreement had been characterized during the first trial as an informal grant of immunity because the government admittedly did not seek court approval pursuant to the statutory immunity provisions of 18 U.S.C. § 6001 *et seq.*[2]

■ This failure to seek court approval does not render the agreement unlawful. The decision of whether to prosecute rests in the Executive Branch. *See United States v. Nixon,* 418 U.S. 683, 693, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *United States v. Cowan,* 524 F.2d 504, 507–508 (5th Cir. 1975); *Weisberg v. U. S. Department of Justice,* 160 U.S.App.D.C. 71, 489 F.2d 1195, 1201 (1973) (en banc), *cert. denied,* 416 U.S. 993, 94 S.Ct. 2405, 40 L.Ed.2d 772 (1974); *United States v. Alarik,* 489 F.2d 1349, 1350–1351 (8th Cir.1971). It can be reviewed only in those limited situations in which there has been a clear abuse of discretion. *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962); *United States v. Alarik, supra* at 1350–1351. *See* K. Davis, Discretionary Justice 207–214 (1969). The decision to grant Fowler, rather than the appellant, informal immunity has not been shown to be arbitrary.[3] The decision was made, so far as the record reveals, in good faith and upon consideration of appropriate factors. An agreement not to prosecute an accomplice who is cooperating in the conviction of others is recognized as a proper exercise of authority.

A.B.A. Standards for Criminal Justice, The Prosecution Function § 3.9(b)(vii) (Approved Draft, 1971).

■ Nor is the agreement so suspect that Fowler's testimony must be regarded as *per se* unreliable and excluded from evidence pursuant to the court's supervisory power to require fair conduct from the government in furnishing evidence. The agreement was made and binding upon the government before Fowler testified; it was not contingent upon the government's satisfaction with the content of the testimony. Fowler could testify truthfully and fully pursuant to the agreement without fear of reprisal. His testimony related to known facts; the agreement did not require the witness to seek out incriminating evidence against the appellant. *Compare Alcorta v. Texas,* 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9 (1957) (per curiam); *Williamson v. United States,* 311 F.2d 441 (5th Cir.1962). Further, the jury was fully apprised of the conditions under which Fowler testified.

### B.

Librach also argues that Fowler's testimony should have been suppressed because the latter, along with his wife and seven children, received $9,947.65 in support payments from the government contrary to law. The payments were received during the period that Fowler was in protective custody because of threats to his life.

The appellant's argument is premised upon the proposition that these protective custody payments could only have been authorized pursuant to Title V of the Organized Crime Control Act of 1970, P.L. 91–452, 18 U.S.C.A. preceding § 3481, which is inapplicable because Librach was not involved

---

**2.** The government did request and obtain authority from the Justice Department to apply to the court for an order of immunity for Fowler. The authority was, however, never exercised because Fowler testified voluntarily. Counsel for the government stated at oral argument that the authority was obtained from the Justice Department as a precautionary measure in light of the fact that an accomplice could, when

put on the stand, renege on his agreement to testify. *See United States v. Edwards,* 516 F.2d 913, 914 (8th Cir.1975) (per curiam).

**3.** This Court has previously questioned the wisdom of the decision. *United States v. Librach, supra* at 553. An unwise decision is not, however, necessarily an arbitrary one.

in organized crime. The government contends that the payments were properly made pursuant to an alternative source of statutory authority, 28 U.S.C. § 524.

■ The appellant has cited no authority for his proposition, either by reference to the decisional law or the legislative history of 28 U.S.C. § 524.

The statute specifically states:

Appropriations for the Department of Justice are available for payment of—

(1) * * * expenses of witnesses and informants, all at the rates authorized or approved by the Attorney General or the Assistant Attorney General for Administration[.]

In our view, this language is broad enough to encompass the payments at issue.[4] Considerable weight is also given to the fact that the Department of Justice has consistently so interpreted the statute. *See County of Marin v. United States,* 356 U.S. 412, 420, 78 S.Ct. 880, 2 L.Ed.2d 879 (1958). We further note that the correctness of the government's interpretation of its statutory powers was conceded in *United States v. Partin,* 493 F.2d 750, 757–758 (5th Cir.1974).

Moreover, not only were the payments properly authorized, but they were actually used for the purposes of protective custody. There is no basis upon which an inference can be made that the testimony of Fowler was purchased. Indeed, while protection from the threats was contemplated before Fowler testified before the grand jury, mention of money payments was not made until after that testimony was given. The evidence of protective custody and support payments was put before the jury. The appellant had full opportunity to develop the implications thereof, and the jury was allowed to judge the credibility of Fowler in the light of all the circumstances.

■ Librach also contends that Fowler's testimony should have been suppressed because: (1) the support payments were authorized without full compliance with Department of Justice regulations, and (2) the threats against Fowler's life, which justified the protective custody, were fictitious. These claims were not raised before the District Court and, accordingly, will not be considered for the first time on appeal.[5] *United States v. Bear Runner,* 502 F.2d 908, 910 (8th Cir.1974).

## II.

■ Librach also argues that the government made prejudicial comments to the jury in its closing argument by implying, without factual support in the record, that he was a source of the threats to Fowler's life. Specifically, he objects for the first time on appeal to the following statement:

Now, Burton Librach is not on trial today for threatening somebody's life. He's not on trial for threatening Mr. Fowler's life. I don't know who threatened his life. I don't know if Green threatened his life or the defendant threatened his life or somebody on behalf of the defendant, or who. That's not what is on trial here today, and that's not the issue and I didn't bring it up, Mr. Kohn [the appellant's counsel] did, about who is threatening who.

Because objection to the statement was not made below, we review the alleged error under the plain error rule of Federal Rule of Criminal Procedure 52(b). The appellant must demonstrate that the closing argument "affected substantial rights resulting in a miscarriage of justice." *United States*

---

4. The more usual witness expenses are provided for in 28 U.S.C. § 1821.

5. Librach's allegation that the threats to Fowler's life were fictitious is also the basis for his claim that the government knowingly used false evidence at trial. Specifically, he refers to Fowler's statements that he received the support payments because of the threats. This testimony was received during redirect examination by the government to rehabilitate the witness's credibility. Again, we do not consider this contention on appeal because it was not raised below. The appellant did not object to the testimony at trial and did not make the contention a basis for his post-trial motion for an acquittal or new trial.

**1232**

v. *Big Crow,* 523 F.2d 955, 960–961 (8th Cir.1975).

■■■ Appellant's counsel chose to focus upon the evidence of threats to Fowler's life in closing argument in an effort to draw adverse inference upon the witness's credibility and to imply that the threats came from another, not Librach. The statement of which the appellant complains was made in rebuttal to this defense argument. When read in context, the government's argument was not improper. It was not made to imply that Librach threatened Fowler's life. The thrust of the statement was that the source of those threats was unknown and irrelevant. The government has the right to comment on arguments raised by the defense.[6] *United States v. Olsen,* 487 F.2d 77, 83 (8th Cir.1973), *cert. denied,* 415 U.S. 993, 94 S.Ct. 1594, 39 L.Ed.2d 890 (1974). Surely, if there was error, the error was not plain error.

### III.

■■■ Librach further argues that he was denied due process because of an unreasonable delay between the time of the offense and the filing of the indictment that prejudicially affected his defense. *See United States v. Jackson,* 504 F.2d 337 (8th Cir. 1974), *cert. denied,* 420 U.S. 964, 95 S.Ct. 1356, 43 L.Ed.2d 442 (1975). This claim was decided against the appellant in our previous decision. *United States v. Librach, supra,* at 555. That decision is the law of the case. *Hawkes v. Internal Revenue Service,* 507 F.2d 481, 482 n. 1 (6th Cir.1974); *Thornton v. Carter,* 109 F.2d 316, 320 (8th Cir. 1940).

### IV.

■■■ Finally, Librach contends that the District Court committed reversible error by refusing to permit a second reading to the jury of prior inconsistent statements of government witnesses which were given at the first trial. The statements were first read to the jury during the cross-examination of witnesses Fowler and Sam Siegal. The appellant contends that this ruling undermined the substantive force of these prior or inconsistent statements contrary to Federal Rule of Evidence 801(d)(1)(A).

The District Court ruled, with the agreement of the government, that the prior statements read before the jury during cross-examination were substantive evidence and could be used for substantive purposes in closing argument. Its failure to permit the appellant to give the prior statements special emphasis by a second reading was not prejudicial error. *See United States v. Skillman,* 442 F.2d 542, 551 (8th Cir.), *cert. denied,* 404 U.S. 833, 92 S.Ct. 82, 30 L.Ed.2d 63 (1971); *Wright v. United States,* 389 F.2d 996, 1000 (8th Cir.1968).

We cannot conclude, as does the appellant, that the jury failed to understand the substantive effect of the prior statements. Indeed, one rationale of Federal Rule of Evidence 801(d)(1)(A) is that juries do consider such evidence for substantive purposes even when instructed to the contrary. 4 Weinstein's Evidence ¶ 801(d)(1)(A)[01] (1975). Moreover, the appellant could have sought an instruction from the court at the time the evidence was first received to dispel any doubts that might have been in the jury's mind.

The judgment of conviction is affirmed.

---

**6.** We noted in our previous opinion that the matter of protective custody because of the threats to Fowler's life could have connotations adverse to the appellant. *United States v. Li-* *brach, supra* at 554 n. 4. Librach should not complain that the issue was argued, for it was his tactical decision to interject the matter into the trial.