[Crim. No. 37139. Second Dist., Div. Two. Mar. 17, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
VICTOR MEZA, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Robert Scarlett, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, William R. Pounders and Robert R. Anderson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**ROTH, P. J.**—Appellant was charged with one count of violating Penal Code section 187 (murder, count I), three counts of violating Penal Code section 217 (assault with intent to commit murder, counts II, III, IV), and two counts of violating Penal Code section 245, subdivision (a) (assault with a deadly weapon, counts V, VI). He was also charged with violation of Penal Code section 182 (conspiracy to commit murder and assault with a deadly weapon, count VII), with the personal use of a firearm during the commission of counts I, II, V, and VI, and with a great bodily injury allegation in conjunction with count II.

Following a trial by jury, appellant was sentenced to state prison for the upper term of six years on his conviction for the lesser but necessarily included offense of voluntary manslaughter. An additional two-year consecutive term for the use allegation was stayed. Appellant was also given the midterm of three years for his conviction for three assault with a deadly weapon offenses, with all of these sentences to run concurrently with the six-year term.

The facts giving rise to the prosecution, stated briefly, were that appellant and his codefendants Henry Diecidue and Adam Holguin (who are not parties to this appeal), members of the "Eastside Bolen" gang, arrived at a residence where a party was being held for members of a rival gang, the "El Monte Hayes." Shortly after the trio's appearance, two Hayes gang members were shot, one to death, and two other Hayes gang members were stabbed. One Tracy Durant, according to her later testimony at the trial herein, saw appellant do the shooting and also observed Diecidue and Holguin perpetrate the stabbings.

In addition to Durant's eyewitness evidence, the prosecution offered testimony of one Danny Vizcaino, a cellmate of appellant after the incident, to the effect appellant had admitted responsibility for shooting the deceased victim, whom he identified by nickname and as a member of the Hayes gang present at the party referred to.

■ It is urged on the appeal that:

1. Appellant was denied a fair trial because Danny Vizcaino was offered an inducement for his testimony that was so attractive it placed him under a compulsion to testify in a particular fashion and was therefore conducive to perjury.

2. The trial court erroneously refused to reopen the proceedings to enable appellant to present a crucial defense witness.

3. The trial court's admonition to the jury to continue deliberating even after all its members had indicated that further deliberation would be futile resulted in coercion of a verdict and denied appellant his right to a trial by jury and his due process right to a fair trial.

None of these contentions can be sustained.

The first of them is premised upon the holdings and rationales set out in *People v. Green* (1951) 102 Cal.App.2d 831 [228 P.2d 867], *People v. Medina* (1974) 41 Cal.App.3d 438 [116 Cal.Rptr. 133] and *People v. Sepeda* (1977) 66 Cal.App.3d 700 [136 Cal.Rptr. 119]. In the last of these it was summarized that: "In *Green* the court held that a conviction cannot stand '. . . where it rests chiefly upon testimony of an accomplice, given under a promise of immunity upon the condition that the testimony he is about to give is such as will result in conviction of one jointly charged with the witness.' (*People v. Green, supra*, 102 Cal. App.2d 831, 834-835.)

"In *Medina* the court concluded that the defendants were denied a fair trial since the prosecution's case depended substantially upon the testimony of accomplices who were granted immunity on condition that their testimony would not substantially or materially differ from prior statements made to the police. (*People v. Medina, supra*, 41 Cal.App. 3d 438, 455.)" (*Id.*, at p. 706.)

It was then concluded that: "However, we cannot condone a police arrangement of the kind involved in this case. Here the informant, who himself was a person of unsavory reputation, had been involved, deeply, in unlawful narcotics activities. Moreover, he was engaged by the Bureau of Narcotics Enforcement to purchase heroin from certain specific individuals. Lastly, he was to receive the bulk of his compensation only if his testimony at *all* of the criminal trials resulting from his undercover activities was consistent with the statements he already had given to the police and to the grand jury. In our judgment such an arrangement places the informant under a strong compulsion to testify in a particular fashion and is conducive to perjury." (*Ibid.*)

In the instant matter Vizcaino testified as follows:

"Q. You presently have a case of four counts of armed robbery pending in Department F; is that correct?

"A. Yes.

"Q. And so would it be fair to say you went to the district attorney with this information which you thought would be helpful to you in the sentencing in your case; is that correct?

"A. Yes.

"Q. And as a result of your making a statement here has the district attorney made some promises to you about your sentencing?

"A. The district attorney here?

"Q. Well, the District Attorney's Office. The People.

"A. They have made me an offer.

"Q. What was their offer?

"A. A year in the county and five years' probation.

"Q. Did that seem like a good offer to you?

"A. Yes.

"Q. And for that offer you in exchange gave them these statements; is that correct?

"A. Yes.

" .  .  .  .  .  .  .  .  .  .  .  .  .  .

"Q. You indicated that the district attorney had conveyed to you that you would receive one year in the county jail. What were you to do in return for receiving that one year in the county jail?

"A. My statement on the case.

"Q. That statement on the case, was there a condition attached to that that it would contain some information that would be beneficial to the district attorney?

"A. Yes, I guess.

"Q. Basically was it your understanding that the statement had to contain something that he could use in his prosecution here?

"A. My statement, yes.

"Q. Yes. That was your understanding of what you had to do to get the year in the county jail?

"A. To talk, yeah, to testify. It's not guaranteed, the year in the county jail.

"Q. But it has been conveyed to you that it's an excellent chance now that you will get a year in the county jail?

"A. A 50-50 chance.

"Q. A 50-50 chance?

"A. (Nods head.)

"Q. Is there something less that's been spoken about other than a year in the county jail?

"A. No.

"Q. Does that 50-50 chance in some way hinge on your testimony in this case?

"A. Pardon me? I didn't understand you.

"Q. That 50-50 chance that you are talking about, does that figure—is that a figure to be influenced in some way by your testimony in this case?

"A. I'm testifying hoping to get a lesser time."

From this it is clear to us the authorities relied upon by appellant are inapposite. Thus, if we assume Vizcaino would receive the benefit of his bargain only if his testimony was beneficial or valuable to the prosecution, that alone is not such an inducement as to place him under the kind of compulsion condemned in the cases cited, since the very nature of the agreement described contemplates that something of assistance to the prosecution will be forthcoming from the informant, else what would be its purpose so far as the former is concerned.

What is improper, in our view, is not that what is expected from the informant's testimony is that it will be favorable to the People's case, but that the testimony must be confined to a predetermined formulation or rendered acceptable only if it produces a given result, that is to say, a conviction. If it were otherwise, no evidence of the sort obtained here could ever be produced, a result neither required by reason nor compelled by precedent.

So, as was pointed out in the context of *Sepeda*, "At the outset, it should be noted that the police often are called upon to work with narcotic addicts and persons with past histories of unlawful narcotic activity in order to cope with the numerous and almost insurmountable problems caused by illegal traffic in drugs; in this modern society drug traffic is a major contributor to other forms of crime and juvenile delinquency and, at times, extreme measures are needed to curb the illicit activity. We also realize that often the police must pay such persons in order to secure their help in apprehending drug 'peddlers' and in getting them to testify. Accordingly, it has been held that there is no per se

prohibition against a police agreement to pay an informant for undercover services upon condition that the informant testify at the criminal trial. (*People* v. *Ballejos* (1963) 216 Cal.App.2d 286, 289 . . .; see generally *People* v. *Rusling* (1969) 268 Cal.App.2d 930, 934-935 . . . .)" (*People* v. *Sepeda, supra,* 66 Cal.App.3d 700, 706.)

■ Respecting appellant's second contention, it is urged the trial court should have permitted reopening of the case after final argument had begun but before it was submitted to the jury to allow testimony that Tracy Durant had admitted to the proposed witness she had perjured herself in order to obtain revenge on the accused. It is accepted at the same time that the question is one addressed to the trial court's sound discretion. (See *People* v. *Frohner* (1976) 65 Cal.App.3d 94 [135 Cal.Rptr. 153].)

Here the record discloses that upon cross-examination Ms. Durant conceded she had made prior inconsistent statements to the police in telling them she had not seen the stabbings; that she identified appellant's clothing at the time of the incident differently before the trial than at it; that as the founder of a female adjunct to the Hayes gang it was her duty to "back up" the male members of that gang; that she had earlier stated she believed appellant should be subject to "payback" or retaliation; that she had told several people she would "get" appellant and "hang" one of his codefendants. Likewise, as pointed out by appellant in his opening brief, much of Ms. Durant's testimony was contradicted by that of other prosecution witnesses, e.g., that she was in the living room when appellant arrived at the residence, while another witness said she was with him in the bedroom.

From this it seems apparent the trial court was of the view Tracy Durant had already been impeached and was satisfied the effect of that impeachment should be left for evaluation by the triers of fact. In this conclusion we do not find an abuse of discretion. Nor are we persuaded otherwise by appellant's strenuous assertion what he proposed to show was that, in spite of her claim to the contrary, she had not been rehabilitated by the time of her testimony at the trial, such that the inconsistencies and contradictions in and respecting her evidence should be ignored, but was still lying at that time. The facts as we see them are that juries are not so easily deluded as appellant suggests and that the jury in this case had before it sufficient information concerning Ms.

Durant's veracity adequately to pass upon the weight to be accorded her testimony.

■   Finally it is urged the trial court was in error when, after receiving notice of one of the juror's refusal to deliberate further, it asked the panel to continue. The incident occurred on the fourth day after the panel had retired. When the foreman initially indicated the jury could not proceed, the remainder of the group was polled on the question. Following their agreement that the matter was at a stalemate, the judge advised them: "What I would like to do is, without rereading any instructions, just refer all of you to those concluding instructions that are involved with your duties as jurors, and have you review those instructions and then if you still feel the same way, I'll have to proceed with it then.

"So let me ask you to go back into the jury room and discuss those concluding instructions among yourselves and see if it's possible that you can continue deliberations.

"If it is not, then I will have to proceed from there.

"So let me ask you to return and we will be standing by. I don't expect it to take a long time. . . .

"Mr. Foreman, in light of the length of time I would and I'm going to ask you to retire again. If it is possible to continue the discussions, you will continue the discussions or ask for the rereading of the testimony.

"If it is not, you may so advise the Court and we will proceed from that point.

"I will ask you now all to retire and see if it is possible after this brief discussion to continue the deliberations on the matter."

Simply put, the action of the trial court in thus encouraging reconsideration by the jury of instructions given and their application to the facts together with such reading of the testimony as required was permissible and commendable. (Cf. *People* v. *Carter* (1968) 68 Cal.2d 810

[69 Cal.Rptr. 297, 442 P.2d 353]; *People* v. *Smith* (1974) 38 Cal.App. 3d 401 [113 Cal.Rptr. 409], hg. den.)

The judgment is affirmed.

Compton, J., and Beach, J., concurred.

On April 9, 1981, the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied May 13, 1981.