PETER LOUIS DYER AKA PERCY LOUIS DYER, APPEL-
LANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 13045

May 31, 1983                                  663 P.2d 699

[Rehearing denied August 30, 1983]

*Cal J. Potter,* Las Vegas, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Robert Miller,* District Attorney, and *James Tufteland,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

*Per Curiam:*

Peter Louis Dyer stands convicted of murder in the first degree, robbery and burglary. Dyer appeals, presenting multiple assignments of error. In this opinion we shall address the three primary issues.

### Privilege Against Self-Incrimination

Of most concern to the court is the trial court's refusal to give a cautionary instruction regarding Dyer's decision not to testify on his own behalf at the trial.

We held in Franklin v. State, 98 Nev. 266, 646 P.2d 543 (1982) that, under the rule announced in Carter v. Kentucky, 450 U.S. 288 (1981), it is constitutional error to refuse to instruct the jury that it must draw no inference from the defendant's election not to testify.

In *Franklin,* above, we also rejected appellant's contention that *Carter* requires automatic reversal for such error. Under Chapman v. California, 386 U.S. 18 (1967), we must reverse the lower court for its refusal to follow the *Carter* rules unless we determine that the error was harmless beyond a reasonable doubt. The *Chapman* court further held that all trial errors which violate the Constitution do not call for automatic reversal. 386 U.S. at 23. Under the strict *Chapman* test, the question thus becomes whether it can be found beyond a reasonable doubt that the error did not contribute to the verdict.

"Assessing the strength of the prosecutor's evidence is, of course, one step in applying a harmless error standard." Holloway v. Arkansas, 435 U.S. 475, 488 (1978). The defendant was placed at the scene of the crime by the undenied presence of his fingerprint on the outside of the door to the trailer house where the crimes were committed. A neighbor of the victim identified Dyer as being in the vicinity of the trailer house on the day the offense was committed.

Dyer's former jail mate, Marvin Henderson, testified that Dyer admitted to him that he had entered the trailer, took money from the victim's purse and then, having been discovered by the victim, attempted to obtain more money by beating her, and, finally, that he left the scene believing that the victim was dead.

No alibi or other evidence was offered to show that Dyer was not at the scene or that there was some reasonable, innocent reason for his being there. Dyer did not testify.

Henderson's testimony is corroborated by the fingerprint,

the neighbor's testimony and to a limited degree by the existence of a scar on Dyer's body which corresponded to a jagged edge on the door frame through which Dyer would have to have passed in exiting the trailer.

Although Henderson was a convicted felon, his account of Dyer's admission appears to stand up except for some minor discrepancies. Also, Henderson's testimony is not as crucial to conviction as posed by Dyer. Circumstantial evidence places Dyer at the time and scene of the crime. Without necessarily having to testify himself, Dyer still had the opportunity of providing evidence of his presence elsewhere or of a reasonable, innocent explanation of his presence at the crime scene. The jury had the opportunity to evaluate Henderson's testimony and would certainly be justified in accepting Henderson's rendition of Dyer's admission to having committed the offense.

Were we to find that the trial court's failure to instruct the jury that it must draw no inference from Dyer's not testifying had a substantial effect on the weight given by the jury to Henderson's statement, then it would be necessary for us to reverse. We do not find this to be the case and therefore affirm on this issue.

The jury was instructed that by constitutional right no person can be compelled in a criminal action to be a witness against himself. This is the general rule, and the jury must be assumed to have known that Dyer did not have to take the witness stand. It is true that the court should have gone on to tell the jury that no inference should be drawn from the exercise of this constitutional privilege; still, we do not find ourselves impelled, in this case, to rule that the failure to give the required specification of the general rule had a material and substantial effect on the weight given by the jury to Henderson's testimony.

Had the jury not been instructed on Dyer's right not to be a witness, we might look at this case in a different light; however, since the jury did know that Dyer was not required to testify, it would not appear to us that failure to instruct on prohibited inferences had a material or substantial effect on the jury's evaluation of Henderson's credibility or of the evidence in this case as a whole.

Taking into account the weight of the prosecution's case, considering Henderson's testimony, the challenge to his credibility, Dyer's presence at the scene, the other corroboratory evidence mentioned above and the giving of the mentioned fifth amendment instruction, we find, beyond a reasonable doubt, that the omitted instruction had no substantial effect on the jury's verdict and that the error therefore was harmless.

## Limitation of Cross-Examination

After forty-five minutes of cross-examination of the State's expert, Giles Sheldon Green, a pathologist and Clark County coroner, the trial judge on his own motion advised defense counsel that he would allow only five additional minutes of defense cross-examination. At the conclusion of the five-minute period defense counsel ended his cross-examination. Defense counsel objected to the time limitation and announced to the court that he had further questions which he wished to address to the witness. He did not advise the court as to the nature of the questions which he intended to ask.

We are now told that defense counsel wished to question the coroner concerning the effect of the victim's age on her susceptibility to injury and how a fall from a chair might have affected the victim's injuries. We are further advised that defense counsel wished to elicit testimony concerning the consequences of a time delay in medically examining the injuries.

Defense counsel did not apprise the court of his intention to pursue any of the foregoing matters. He merely stated that he had additional questions and that he objected to the time limitation.

Appellant concedes that limitation of cross-examination rests within the sound discretion of the court. *See* Lloyd v. State, 304 So.2d 232 (Ala. 1974); State v. Curtis, 529 P.2d 1249 (N.M. 1974). It may have been ill-advised to allow only five additional minutes of questioning, but we cannot conclude that the defense was wholly deprived of the right to test the coroner's credibility. If the trial court had been clearly advised of the nature of the intended questioning, and if it appeared that such questioning was significant to the defendant's case, we might take a different view. Where counsel fails to inform the court of the necessity for additional time, we cannot say that the trial court abused its discretion in limiting cross-examination.

## Admissibility of Hearsay

Defense counsel offered into evidence a statement alleged to have been made by the victim to her attending nurse while in the hospital.[1]

---

[1]Victim: "You can be nice and kind to people and they turn around and do terrible things to you."

Nurse: "I asked her if she knew who had done this. I said, 'Rose, do you know who did this to you?' and she shook her head, 'Yes'."

"I said, 'Well, you are certainly going to tell the police'."

"And she shook her head, 'no'."

Defense counsel suggested to the trial court a number of possible theories of admissibility of these hearsay statements. Among the theories offered were dying declaration, admission by a party opponent and res gestae. Counsel apparently now considers that none of these exceptions is applicable in this case.

The only conceivable theory of admissibility, one not urged by defense counsel at trial, is under NRS 51.315(1).[2]

It appears in the record, uncontradicted, that the elderly victim had told various stories about her assault, on one occasion claiming it was a white man and a black man, on another occasion that it was two black men and on another that it was a white man and his wife. The trial judge was not satisfied as to the trustworthiness of the statements and excluded them. We find no abuse of discretion in this ruling.[3]

All assignments of error have been examined. We find no reversible error and affirm the conviction.

MANOUKIAN, C. J., SPRINGER, MOWBRAY, and GUNDERSON, JJ., and ZENOFF, SR. J.,[4] concur.

---

[2]NRS 51.315 in pertinent part provides:

51.315   Hearsay exceptions:   Declarant unavailable.

1.   A statement is not excluded by the hearsay rule if:

(a) Its nature and the special circumstances under which it was made offer strong assurances of accuracy; and

(b) The declarant is unavailable as a witness.

. . . .

[3]In a supplemental brief appellant cites Johnstone v. State, 92 Nev. 241, 548 P.2d 1362 (1976). *Johnstone* ruled that certain hearsay testimony was admissible under NRS 51.315 because the hearsay was important if not essential since it lent credence to an otherwise doubtful story. This is not the case here, and the trial judge acted well within the scope of judicial discretion in refusing to admit the statements in question.

[4]The Chief Justice designated THE HONORABLE DAVID ZENOFF, Senior Justice, to sit in this case. Nev. Const., art. 6 § 19; SCR 10.