ANTHONY BARREN, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 13222

September 27, 1983                                        669 P.2d 725

[Rehearing denied December 9, 1983]

*Frank J. Cremen* and *James O. Porter,* Las Vegas, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Robert Miller,* District Attorney; and *James Tufteland* and *Randall Weed,* Deputy District Attorneys, Clark County, for Respondent.

___

[3]CHIEF JUSTICE NOEL E. MANOUKIAN is disqualified in this matter. JUSTICE JOHN C. MOWBRAY has voluntarily recused himself. Pursuant to order entered by the former Chief Justice, SENIOR JUSTICE DAVID ZENOFF has been assigned to participate in the court's deliberation and determination of this matter. *See* Nev. Const., art. 6, § 19(1)(a) and 19(1)(c), and SCR 10.

## OPINION

By the Court, GUNDERSON, J.:

On the morning of June 18, 1979, Rose Licker Shapiro was found unconscious in her North Las Vegas house trailer, severely beaten about the face and head. Some ten days later, she died in the hospital from her injuries. Police initially made little headway in the investigation of the Shapiro homicide; their identification of the killer came as a result of information supplied by appellant Anthony Barren.

On July 20, 1979, appellant Barren was in the North Las Vegas Jail on unrelated burglary charges which the investigating officer decided did not warrant prosecution. Following Barren's release from custody, the officer took him into the detective bureau to discuss the possibility of appellant joining the military. As they conversed, appellant suddenly volunteered that the officer was the "only cop that had treated him nice," and, evidently motivated by regard for the officer, appellant then offered to reveal who had murdered "an old lady in a house trailer" in North Las Vegas.

The first officer immediately contacted Officer King, the

detective assigned to the Shapiro case. King took appellant to an interview room and read him his *Miranda* rights. After talking with appellant to determine whether his information was worth pursuing, King decided to record the interview. When recording equipment was secured, King again advised appellant of his *Miranda* rights, and the interview proceeded.

In his recorded statement, appellant recounted in considerable detail events surrounding the Shapiro beating. Appellant told King that on the evening of June 17, he and a Peter Dyer had left their boxing class and gone to the Shapiro trailer with the intention of burgling that residence. Appellant remained in the screened porch area, while Dyer broke into the trailer where it seems he unexpectedly found Shapiro at home. Although appellant had not entered the trailer's interior, he looked through a window and was surprised to see Dyer pummeling Shapiro. At this point, he became frightened and knocked on the window, yelling to Dyer to stop. Appellant then ran from the scene and only later met Dyer at his home. Thus, it would seem from appellant's story that he had never agreed Shapiro should be physically abused in any way, and that he arguably had withdrawn from the burglary scheme before Dyer administered the fatal blows.

Following the interview with King, appellant agreed to assist police by wearing an electronic eavesdropping device and initiating a conversation with Dyer. The contents of this conversation substantiated the story appellant had told to Officer King. In addition, appellant took a polygraph examination, which corroborated his story.

Although appellant clearly had been involved in a burglary, he was not arrested after his interview with King. Instead, appellant was released and driven home by King in accordance with an earlier offer by the detective. He subsequently cooperated with the police in every possible way. Although King sought prosecution of Dyer for the Shapiro murder on July 23, 1979,[1] it was not until some three weeks later, on August 15, 1979, that King submitted a request for the prosecution of appellant.

Appellant ultimately was charged with murder, robbery and burglary, and, at trial, his recorded statements were admitted over timely objection. He was convicted on all three counts and this appeal followed.

---

[1]Dyer was subsequently convicted of first-degree murder, robbery and burglary. *See* Dyer v. State, 99 Nev. 422, 663 P.2d 699 (1983).

## ADMISSIBILITY OF APPELLANT'S STATEMENTS

On appeal, appellant renews objections made during trial that his statements to Officer King were involuntary and inadmissible. He contends they were impermissibly induced by a promise of leniency or by the expectation that he was being interviewed solely as a witness. In response, the State argues that appellant was not in custody at the time he made the statements to King, and that consequently the protections afforded by *Miranda* and its progeny do not apply. We need not address the State's argument because, assuming *arguendo* that appellant was actually in custody when he made statements to King, the trial court found the statements were not induced either by a promise of leniency or by appellant's expectation that he was being interviewed solely as a witness. We decline to disturb that ruling.

When the State seeks to introduce a statement obtained from a defendant by the police, the State must demonstrate, by a preponderance of the evidence, that the defendant's alleged waiver of his fifth and sixth amendment rights was knowing and voluntary. Laursen v. State, 97 Nev. 568, 634 P.2d 1230 (1981); Scott v. State, 92 Nev. 552, 554 P.2d 735 (1976). However, where the trial court's determination that a defendant was not improperly induced to make the statement is supported by substantial evidence, as it seems to be here, such a finding will not be disturbed on appeal. Brimmage v. State, 93 Nev. 434, 567 P.2d 54 (1977).

If appellant's statements had been induced by a promise of leniency, they arguably would have been inadmissible. *See* Franklin v. State, 96 Nev. 417, 421, 610 P.2d 732 (1980). It appears, though, that the alleged promise of leniency to which appellant draws attention can be viewed as no more than an innocuous and ambiguous comment by Officer King that appellant would be "going home." King made this statement in the context of an offer to drive appellant home, which he subsequently honored. From independent review of the record, we are satisfied the district court's determination that Officer King's statements were not an offer of leniency is supported by substantial evidence. Although another judge might have viewed the evidence differently, we will not disturb this finding on appeal.

Appellant's alternative argument—*i.e.,* that his statements are inadmissible because they were induced by an expectation

he was being interviewed solely as a witness—is also without merit. Officer King testified that, before taking appellant's statement, he expressly told appellant the crimes involved were felonies, and that anyone involved could be tried as a principal. King also testified he informed appellant that he was a suspect. This evidence, which the district court was entitled to credit, contradicts appellant's contention that he was induced to believe he was being interviewed solely as a witness.

## SUFFICIENCY OF THE INDICTMENT

Appellant was charged by grand jury indictment. He now challenges the indictment's sufficiency, arguing it failed to provide adequate notice of the offenses charged so as to enable him to prepare an adequate defense. The indictment was worded, in pertinent part:

COUNT I—Murder

[Appellant] did then and there, without authority of law and with malice aforethought, wilfully and feloniously kill ROSE LICKER SHAPIRO, a human being, by striking the said ROSE LICKER SHAPIRO repeatedly about the head with an unknown object.

COUNT II—Robbery

[Appellant] did then and there wilfully, unlawfully and feloniously take personal property belonging to ROSE LICKER SHAPIRO, to-wit: lawful money of the United States, from the person of ROSE LICKER SHAPIRO, or in her presence, by means of force or violence or fear of injury to, and without the consent and against the will of the said ROSE LICKER SHAPIRO.[2]

On its face, the indictment thus alleges that appellant was responsible for the victim's death because he *personally* struck her, and committed robbery by *personally* taking Shapiro's property from her person or presence by force or fear. Nothing in the indictment indicates either that a third party, Dyer, inflicted the beating which resulted in Shapiro's death, or that Dyer took Shapiro's property from her person or presence by force or fear. As a result, the language of the indictment gives no indication that the State was proceeding on any other theory than that of appellant's direct, personal commission of the criminal acts alleged.

Despite the wording of the indictment, at trial the State presented little or no evidence that appellant struck the victim or

---

[2]Appellant does not challenge the sufficiency of the related burglary count. Accordingly, we do not address the question of whether the burglary indictment was defective.

took property from her presence by force or fear. Instead, the State appears to have proceeded primarily on a theory of vicarious liability, arguing that appellant was guilty of murder and robbery on the basis of acts committed by Dyer to further a mutual plan to burgle Shapiro's residence. Thus, appellant maintains there is a fatal variance between the evidence presented at trial and the indictment, without adequate evidence being adduced to show that appellant personally committed the acts charged.

In regard to this contention, we must note initially that this court has previously upheld a quite similar indictment against a challenge like that now advanced by appellant. In McWilliams v. State, 87 Nev. 302, 486 P.2d 481 (1971), by brief per curiam opinion, we found an indictment charging robbery sufficient where the evidence at trial established only that the defendant had aided and abetted another in the commission of the crime. We noted:

> One who aids or abets another in the commission of a felony "shall be proceeded against and punished" as a principal. . . . Accordingly, the charge was permissible and, since the proof established that the accused was concerned in the acts charged as an offense, the verdict may stand. . . .

*Id*. at 303.[3]

Under *McWilliams,* then, the defendant who aids and abets another in the commission of an offense may be charged as a principal, and an indictment charging the defendant personally committed the acts constituting the charged offense is sufficient—even though the evidence adduced at trial establishes only that the defendant aided and abetted another. There are decisions of other jurisdictions in accord. *See* People v. Bohmer, 120 Cal.Rptr. 136 (Cal.App. 1975) *cert. den.* 423 U.S. 990, 96 S.Ct. 402 (1975); State v. Smolin, 557 P.2d 1241 (Kan. 1976); People v. Scheidt, 513 P.2d 446 (Colo. 1973); State v. Capitan, 494 P.2d 443 (Or.App. 1972). *See generally* 2 C.E. Torcia, Wharton's Criminal Procedure (12th ed. 1975) § 284.

On the other hand, the continued use of such indictments is not consistent with other holdings of this court in regard to

---

[3]This result arguably gains support from NRS 195.020, which defines "principal" as follows:

Every person concerned in the commission of a felony, gross misdemeanor or misdemeanor, whether he directly commits the act constituting the offense, or aids and abets in its commission, and whether present or absent; . . . is a principal, and shall be proceeded against and punished as such. . . .

conclusionary indictments. For example, when an indictment charges that a defendant aided and abetted another in the commission of a crime, this court has held the indictment must provide sufficient information as to the acts of the defendant which constituted the "aiding and abetting," so that the defendant may adequately prepare his defense. In Sheriff v. Standal, 95 Nev. 914, 604 P.2d 111 (1979), this court reviewed an indictment which alleged that a defendant had aided and abetted another in the commission of a crime, but which failed to allege any facts in regard to the "aiding and abetting" allegation. We declared such a conclusory indictment inadequate, noting: "The state apparently contends that respondent's course of conduct makes her guilty of aiding and abetting. We see no reason why the state cannot set forth the course of conduct with reasonable clarity in the indictment." *Id.* at 917.

More recently, in Lane v. Torvinen, 97 Nev. 121, 624 P.2d 1385 (1981), we held that: "Specifically, an indictment alleging that a defendant aided and abetted the commission of a crime must provide information as to the acts performed by the defendant." *Id.* at 123. Our decision in *Lane v. Torvinen* was in part based upon applicable statutory law. NRS 173.075(1) expressly provides that an indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." NRS 173.075(2) requires the indictment to include either the means by which the offense was accomplished, or to show that such means are unknown.

The precedents of this jurisdiction thus present an odd dichotomy in regard to the sufficiency of indictments. Under our terse, per curiam holding in *McWilliams,* an indictment charging an aider and abettor with the direct personal commission of the offense is adequate even if the evidence later presented at trial tends only to prove that the defendant aided and abetted. However, under *Standal,* an indictment specifically alleging that the defendant aided and abetted another must provide information as to the specific acts which constituted the aiding and abetting. The result is that a defendant charged as an aider and abettor, who has at least been apprised of the prosecution's general theory of the case, is entitled to still more information—while an aider and abettor charged as a principal, who has not been informed of the prosecution's theory of the case and who thus has a greater need, is not entitled to any clarifying information whatsoever.

Clearly our precedents now lead to anomalous and illogical results, and, in the instant case, it appears the appellant may have fallen victim to the basic danger that insufficient indictments create. Appellant was forced to proceed to trial with no

direct notice whether the prosecution would attempt to prove that appellant personally struck the fatal blows, or would instead try to show he was for other reasons vicariously liable for Dyer's actions. Even during trial, the State was apparently uncertain as to its theory of the case. At one point, the State offered testimony from appellant's boxing coach in an apparent attempt to imply that Shapiro's injuries had been caused by someone with appellant's boxing and punching abilities; however, ultimately the State seemed to fall back on an unpleaded theory of vicarious liability.

Although any prosecutor might well desire the luxury of having an option not to reveal his or her basic factual theories, and wish for the right to change the theory of a case at will, such practices hardly comport with accepted notions of due process. As we observed in Simpson v. District Court, 88 Nev. 654, 503 P.2d 1225 (1972):

> The indictment under consideration would allow the prosecutor absolute freedom to change theories at will; it affords no notice at all of what petitioner may ultimately be required to meet; thus, it denies fundamental rights our legislature intended a definite indictment to secure. . . .

*Id.* at 661.

Accordingly, we now hold that where the prosecution seeks to establish a defendant's guilt on a theory of aiding and abetting, the indictment should specifically allege the defendant aided and abetted, and should provide additional information as to the specific acts constituting the means of the aiding and abetting so as to afford the defendant adequate notice to prepare his defense.[4] See Sheriff v. Standal, 95 Nev. 914; Lane v. Torvinen, 97 Nev. 121. To the extent this holding is inconsistent with *McWilliams v. State,* that case is hereby overruled.

## REDUCED STANDARD OF REVIEW

Despite the conclusion reached in the preceding analysis, the State argues that even if there was a variance between the indictment in this case and the proof presented at trial, the variance did not result in a denial of due process.

It is true that appellant did not challenge the sufficiency of the indictment prior to trial. We have previously held:

---

[4]As pointed out in Simpson v. State, 88 Nev. at 658 n. 4, NRS 175.075(2) allows flexibility in pleading when the evidence is unclear as to the means by which a crime has been committed.

An element of waiver is involved, when an accused proceeds to trial without challenging the indictment. Thereafter, he should not be heard to complain if the indictment, with the Grand Jury transcript, gave notice of what later transpired at trial; and to determine this, we can examine the trial transcript also.

Simpson v. District Court, 88 Nev. at 661: *see also* Logan v. Warden, 86 Nev. 511, 471 P.2d 249 (1970). Further, in State v. Jones, 96 Nev. 71, 605 P.2d 202 (1980), addressing an allegation of variance made after all the evidence was adduced, this court commented that such an "eleventh hour challenge, after the close of all the evidence, belies any claim of prejudice. . . ." *Id.* at 74.

Nevertheless, despite this reduced standard of review, we conclude in the instant case that appellant did not have sufficient notice as to the offenses of murder and robbery, and that he may have been substantially prejudiced as a result. *Cf.* State v. Jones, 96 Nev. at 74. In reaching this conclusion, we have carefully reviewed the record presented on appeal, which includes the trial and grand jury transcripts. We find it particularly significant that although the grand jury transcript contained some evidence (of questionable admissibility) suggesting appellant might have struck the fatal blows, it was not until the day of trial that the *prosecution* filed a motion in limine asking the court to preclude *appellant* from introducing the statements in which this evidence was contained. In effect, the prosecution managed to conceal its primary theory until the day of trial, revealing only immediately prior to opening statements that it might be contending appellant was responsible as an aider and abettor. Furthermore, even after trial commenced, the prosecution seemed to vacillate in its theory of the case, presenting testimony of appellant's boxing coach as previously described. Finally, we note appellant's respected counsel asserts that uncertainty concerning the State's theories prejudiced his ability to present to the jury his own theories as to appellant's withdrawal from the burglary scheme, prior to the murder and robbery. This seems not entirely implausible.

In sum, given the record, and given appellant's entitlement to a presumption of innocence on the murder and robbery charges, we are unable to conclude that the indictment's insufficiency was non-prejudicial—even when the indictment is tested by a reduced standard.

As previously noted, appellant has neither questioned the

sufficiency of the burglary indictment, nor challenged the burglary conviction obtained by virtue of the indictment. Accordingly, we take no action concerning appellant's burglary conviction. On the basis of the preceding analysis, however, we reverse and remand appellant's convictions of murder and robbery.

MANOUKIAN, C. J., and SPRINGER, MOWBRAY, and STEFFEN, JJ., concur.