SHERIFF, HUMBOLDT COUNTY, NEVADA, Appellant, v. RAUL ACUNA, Respondent.

No. 21507

October 8, 1991                                                    819 P.2d 197

R. *Michael McCormick,* District Attorney, and *Robert Griffy,* Deputy District Attorney, Humboldt County, for Appellant.

*Donald York Evans,* Reno, for Respondent.

## OPINION

By the Court, STEFFEN, J.:

Respondent Raul Acuna allegedly sold cocaine to an individual who was motivated by his own criminal involvement with the law to cooperate with the police. The alleged transaction was monitored electronically and Acuna was arrested and charged with selling a controlled substance. After a preliminary hearing, Acuna filed a pretrial petition for a writ of habeas corpus based upon an asserted violation of this court's holding in Franklin v. State, 94 Nev. 220, 577 P.2d 860 (1978). The district court agreed that *Franklin* was dispositive and issued the writ. Having reevaluated the *Franklin* rule and concluded that it should not be further perpetuated, we reverse without determining whether the district court erred in finding a violation of the *Franklin* standard.[1]

---

[1]Since this opinion was completed, but prior to its issuance, the 1991 Legislature enacted legislation which essentially abrogated the *Franklin* rule. *See* Chapter 175 of the Nevada Revised Statutes.

## FACTS

Phillip Crawford, a "cooperating individual" who was working with W. Kent Brown, an investigator for the Tri-County Narcotics Task Force, told Brown that he had arranged to buy a small quantity of cocaine from Acuna. The alleged transaction occurred at a parking lot in the Winnemucca area and was monitored by police through means of an electronic listening device carried on Crawford's person. On April 11, 1990, Acuna was arrested and charged with selling a controlled substance. The following month, after a preliminary hearing, Acuna filed a pretrial petition for a writ of habeas corpus based upon a violation of the *Franklin* rule arising out of the State's arrangement with Crawford.

At the hearing on the petition, Acuna contended that because Crawford had not as yet been formally charged and was allowed to enter a guilty plea, Crawford was under compulsion to testify against Acuna in a particular manner. The State opposed the petition on the ground that the *Franklin* rule applied only to an accomplice and that Crawford did not fit in that category. The district court rejected the State's position, ruling that *Franklin* was not limited to accomplice testimony.[2] Thereafter the petition was granted and the State appealed.

## DISCUSSION

Our ruling in *Franklin* was a takeoff from the case of People v. Medina, 41 Cal.App.3d 438 (Cal.Ct.App. 1974). The *Medina* court held, and we so quoted in *Franklin,* "that a defendant is denied a fair trial if the prosecution's case depends substantially upon accomplice testimony and the accomplice is placed, either by the prosecution or the court, under a strong compulsion to testify in a particular fashion." *Id.* at 145. However, the *Franklin* court substantially expanded the *Medina* ruling by condemning the use of testimony secured from a witness through means of an executory plea bargain. Specifically, we stated that the application of the *Medina* rationale

> may not be limited solely to situations where immunity is expressly conditioned on specific testimony. As a matter of logic, if the circumstances of the plea bargain would reasonably cause the alleged accomplice to believe he must testify in a particular fashion, then a less explicit arrangement also violates the defendant's due process rights.

[2] We agree with the district court that the *Franklin* rule was not limited to testimony offered by accomplices. Perjury remains a serious concern with all potential witnesses who are willing to exchange testimony in return for considerations of leniency by the State.

*Franklin,* 94 Nev. at 223-24, 577 P.2d at 862. We thereafter concluded that

> [b]y bargaining for specific testimony to implicate a defendant, and withholding the benefits of the bargain until after the witness has performed, the prosecution becomes committed to a theory quite possibly inconsistent with the truth and the search for truth. We deem this contrary to public policy, to due process, and to any sense of justice.

*Id.* at 225-26, 577 P.2d at 863. The concern thus expressed by the *Franklin* majority was the lack of reliability inherent in an arrangement where "the prosecutor must simultaneously purchase and coerce testimony in order to obtain a conviction . . . ." *Id.* at 225, 577 P.2d at 863.

The *Franklin* court is not to be criticized for its zeal in seeking to promote and protect the truth-seeking objective of a criminal trial. Indeed, criminal justice may never be consistently attained at the expense of truth. We nevertheless conclude that our rather isolated *Franklin* rule is of limited benefit to the search for truth, and that it in fact may tend to frustrate truth and create incentives for dissembling at trial. The *Franklin* constraints, noted above, do nothing to restrain the incentives of a defendant and the State to consummate bargains deemed advantageous to both. The State understandably desires testimony from persons vulnerable to prosecution that will be of assistance in bringing other malefactors to justice. Such persons are also motivated to bargain in order to ease the consequences that may ensue as a result of their own criminal conduct. The stage is thus set, at least potentially, for the cooperating individual to provide the State with information helpful to the prosecution of one or more other defendants in exchange for some form of leniency concerning his own criminal involvement.

We realize that persons vulnerable to criminal prosecution have incentives to dissemble as an inducement for more favorable treatment by the State. It is thus clear that at least during the negotiating stages of a plea bargain or other arrangements for leniency, the potential witness will provide information that he or she deems to be of value to the State in the prosecution of one or more other criminally involved persons. We must assume that the prosecutor will evaluate the veracity of the information and bargain for its use in the form of trial testimony only if there is a basis for concluding that the information is reliable. In no event would we expect our prosecutors to enter into agreements for perjured testimony.[3]

---

[3]Obviously, this court would view most seriously any arrangement between a potential witness and a prosecutor calling for testimony known or

Moreover, we view as unrealistic the proposition that withholding the benefit of the bargain until after the promisee testifies tends to commit the prosecution to a theory that may be inconsistent with truth or the search for truth. It is difficult to envision a responsible prosecutor proceeding to trial without having carefully developed a trial plan or strategy designed to prove the truth of a theory upon which the prosecution is based. Indeed, in Barren v. State, 99 Nev. 661, 669 P.2d 725 (1983), we stated that "[a]lthough any prosecutor might well desire the luxury of having an option not to reveal his or her basic factual theories, and wish for the right to change the theory of a case at will, such practices hardly comport with accepted notions of due process." Id. at 668, 669 P.2d at 729. It seems clear, therefore, that one of the few instances when a prosecutor could improperly adhere to a predetermined factual theory during trial would be where the prosecution is based upon perjured testimony knowingly bargained for as a means of securing a conviction. In the latter case, the problem arises from the prosecutor's dishonesty and lack of ethics as opposed to the withholding of benefits until after the witness testifies.

If the State is required to provide the benefit of the bargain prior to the time the promisee testifies at trial, the State's expectations may be frustrated by an uncooperative or "forgetful" witness. Although it is true, as observed by the court in Franklin, that withholding the benefit of the bargain until after the promisee testifies may create pressure to testify in a particular manner, it would be neither realistic nor fair to expect the State to enter into a bargain without assurances that the promisee's trial testimony would be consistent with the information he or she provided to prosecutors as a basis for leniency. We are simply unwilling to assume, and therefore base a rule of law upon, the proposition that our prosecutors will sit down with persons vulnerable to prosecution and commit them to testifying perjuriously. If the person seeking the bargain purports to have true information, and the State concludes that such information is reliable and would be of assistance in prosecuting other persons, the State, in return for a commitment of leniency, would have every right to expect that the promisee's trial testimony would be essentially consistent with the original information upon which the State's promise was induced. If the promisee reneges on the commitment to provide truthful and consistent trial testimony, the State will be free to withdraw from the bargain.

strongly suspected by the prosecutor to be false. Such an arrangement would clearly violate, inter alia, the rules of professional conduct and would therefore constitute a basis for the imposition of stringent discipline.

We now conclude that bargaining for specific trial testimony, i.e., testimony that is essentially consistent with the information represented to be factually true during negotiations with the State, and withholding the benefits of the bargain until after the witness has testified, is not inconsistent with the search for truth or due process. However, we emphasize that our ruling does not countenance a bargain for testimony conforming to a predetermined script or for leniency or other consideration contingent upon the State obtaining a conviction. We hold only that when our prosecutors bargain in good faith for testimony represented to be factually accurate, it is not a violation of due process or public policy to withhold the benefit of the bargain until after the witness testifies.

Although we have concluded that executory plea agreements are acceptable under Nevada law, we are not unmindful of the danger posed by perjured testimony concocted by persons seeking lenient treatment in connection with their own criminal problems. We have already noted that the State may properly enter into plea arrangements when the putative witness persuasively professes to have truthful information of value and a willingness to accurately relate such information at trial. The less than remote possibility remains, however, that the recipient of the State's promise has fabricated his or her information and will repeat it at trial as a perjurer. Courts across the land have, in part, sought to deal with the incentive to commit perjury by requiring at trial the baring of all aspects of the bargain pursuant to which the testimony is given. As a result, it is generally determined that the terms of the State's bargain concern only the weight, and not the admissibility of the testimony.

In accordance with the foregoing, we now embrace the rule generally prevailing in both state and federal courts, and hold that any consideration promised by the State in exchange for a witness's testimony affects only the weight accorded the testimony, and not its admissibility. Second, we also hold that the State may not bargain for testimony so particularized that it amounts to following a script, or require that the testimony produce a specific result. Finally, the terms of the *quid pro quo* must be fully disclosed to the jury, the defendant or his counsel must be allowed to fully cross-examine the witness concerning the terms of the bargain, and the jury must be given a cautionary instruction.[4]

---

[4]We are confident that the rule adopted by this opinion will adequately safeguard a defendant's right to a fair trial. Therefore, to the extent that *Franklin* is inconsistent with our ruling in the instant case, *Franklin* is overruled.

In reevaluating *Franklin,* we have concluded that it is both fair and prudent to align Nevada with the general rule of law prevailing in other jurisdictions. By way of illustration, the Wisconsin Court of Appeals referred to the rule which we now adopt as follows:

> The testimony of an accomplice, given in exchange for concessions or inducements by the prosecution, is generally admissible where the "established safeguards"—full disclosure of the bargain, opportunity for cross-examination and adequate instructions to the jury—are present. United States v. Dailey, 759 F.2d 192, 196 (1st Cir. 1985). Any concern over the credibility and reliability of such testimony is said to be satisfied by allowing the jury to evaluate the accomplice's testimony, tested by cross-examination, in light of full disclosure of any plea agreements and careful instructions by the trial court. *Id.* at 198-200.

State v. Nerison, 387 N.W.2d 128, 130 (Wis.App. 1986).

In State v. Burchett, 399 N.W.2d 258 (Neb. 1986), the Nebraska Supreme Court explained the rule thusly:

> The general rule announced in other jurisdictions is that "an accomplice's testimony is admissible notwithstanding the fact that the testimony is procured by means of a plea bargain. The promise of leniency or otherwise favorable prosecutorial treatment goes only to the credibility of the accomplice's testimony, not to its admissibility." State v. Garcia, 102 Idaho 378, 386, 630 P.2d 665, 673 (1981). *See, also,* Kelly v. State, 460 N.E.2d 137 (Ind. 1984); State v. DeWitt, 286 N.W.2d 379 (Iowa 1979); State v. Leonard, 74 N.C.App. 443, 328 S.E.2d 593 (1985).
>
> Generally, it is only where the prosecution has bargained for false or specific testimony, or a specific result, that an accomplice's testimony is so tainted as to require its preclusion. United States v. Librach, 536 F.2d 1228 (8th Cir. 1976); State v. Garcia, supra; State v. DeWitt, supra.

*Id.* at 266.

Recently, the California Supreme Court focused on the issue addressed in *People v. Medina, supra,* and concluded that plea bargains consummated in exchange for testimony are unacceptable only where "the testimony must be confined to a predetermined formulation" or must produce "a given result, that is to say, a conviction." People v. Garrison, 765 P.2d 419, 428 (Cal. 1989) (quoting People v. Meza, 116 Cal.App.3d 988, 994 (1981)). The *Garrison* holding is reflective of what appears to be a national consensus disavowing plea bargains in exchange for testimony only where the bargain compels the witness to provide

particularized testimony. *See, e.g.*, United States v. Dailey, 759 F.2d 192 (1st Cir. 1985); State v. Nerison, 401 N.W.2d 1 (Wis. 1987), and cases cited therein. As noted above, we remain concerned over the prospects of vulnerable persons fabricating testimony as an inducement for leniency by the State, but are convinced that the safeguards provided in the instant ruling will be more effective in ferreting out false testimony than the restrictive rule in *Franklin*. Finally, we reemphasize that it is not improper for the State to require the promisee to testify in a general manner that is consistent with the information provided to the State as an inducement for the bargain, subject, of course, to any change mandated by truth if the promisee subsequently admits to falsifying the information upon which the bargain is based. In the latter event, the State is under no obligation to provide the witness with the benefit of a bargain resulting from disinformation. The testimony condemned by the courts generally, and now this court in particular, is that which must be played according to a predetermined script and irrespective of its truthfulness. The witness must understand that he is not free to commit perjury, and that the plea bargain may not be based upon false testimony.

In the hearing before the district court, testimony established that Crawford was not placed under a compulsion to testify according to preformulated, particularized, and dubious facts. Of course, Crawford was aware of the fact that the State was privy to the transaction concerning which he would testify, and that any deviation from the known, true facts would result in a loss of the concessions he expected to receive from the State. He was nevertheless under no compulsion to testify in accordance with a manufactured script or in any way contrary to the truth. Crawford's agreement with the State compelled him only to be truthful in his testimony.

In view of our ruling, the district court's order granting Acuna's petition for a writ of habeas corpus is reversed and the case is remanded for further proceedings.

Mowbray, C. J., and Agosti, D. J.,[5] concur.

Rose, J., with whom Springer, J., agrees, concurring:

I am concurring in the result reached by the majority because I do not think the conduct of the law enforcement officers violated the *Franklin* rule. The granting of the writ of habeas corpus should be reversed on that basis rather than overruling the *Franklin* decision.

___

[5]The Honorable Deborah A. Agosti, Judge of the Second Judicial District, was designated by the Governor to sit in the place of The Honorable Cliff Young, Justice. Nev. Const., art. 6, § 4.

In Franklin v. State, 94 Nev. 220, 577 P.2d 860 (1978), this court balanced the reliability of accomplice testimony with the strong desire of law enforcement to use such testimony, even when the accomplice was given express or implied direction to testify in a specific way. We concluded that an executory plea bargain agreement in which the state bargains for specific testimony is improper, and the accomplice should not be permitted to testify. According to *Franklin*, whether the agreement was a bargain for specific testimony would depend on the express agreement between law enforcement and the accomplice, and the circumstances of the entire transaction. *Franklin* was a reasonable decision to help ensure that truthful testimony would be presented at trial.

The State attempts to distinguish this case from *Franklin* by arguing that the *Franklin* rule should be limited to accomplice testimony and not to other informants. However, informant testimony presents the same reliability concerns as accomplice testimony. Logic and our dicta in State Bar of Nevada v. Claiborne, 104 Nev. 115, 756 P.2d 464 (1988), would indicate that the *Franklin* rule should apply to informant as well as accomplice testimony.

In this case, law enforcement bargained for Crawford's cooperation, not his testimony. The agreement was that Crawford would attempt to purchase drugs from Acuna, and law enforcement would then recommend that Crawford receive probation for his involvement in a prior drug sale. Crawford then made a controlled purchase of marijuana from Acuna. Since this transaction with Acuna was monitored, there is a minimum chance of Crawford's fabrication for or against law enforcement. Crawford then testified at trial about this purchase from Acuna.

While it is true that the agreement with Crawford was executory to the extent that he had not been charged with or sentenced for any felony, I do not believe this transaction violated *Franklin*. First, it was a bargain for cooperation, not testimony. When the bargain was struck, there was no testimony to bargain for, since the transaction had not even occurred. Second, there is no suggestion that Crawford was obligated to testify in any particular manner. And, since the transaction Crawford testified about was closely monitored, there is minimum chance of fabrication. For these reasons, I do not believe such testimony would be prohibited by our prior ruling in *Franklin*.

The majority elects to overrule *Franklin,* rather than decide the case on this basis or limit the *Franklin* ruling to accomplice testimony, even though nothing has transpired to diminish the concern for the reliability of this type of testimony since *Franklin*

was decided in 1978. In fact, many situations have come to light that justify our suspicions. For example, in the celebrated case of Leslie Vernon White, the Los Angeles district attorney's office found itself in a difficult situation. White admitted that he frequently lied on the witness stand when testifying as a jailhouse informant, which resulted in the convictions of many possibly innocent people.[1] Such revelations are all too frequent and confirm our concern about accomplice and informant testimony.

"When a rule of law has once been settled, contravening no statute or constitutional principle, such rule ought to be followed unless it can be shown that serious detriment is thereby likely to arise prejudicial to public interests." Zgombic v. State, 106 Nev. 571, 580, 798 P.2d 548, 554 (1990) (JUSTICE STEFFEN, dissenting, *quoting* Maki v. Frelk, 239 N.E.2d 445, 447 (Ill. 1968)). I see no compelling reason to overrule *Franklin* rather than limit its applicability in some situations. The *Franklin* rule recently has been changed by legislation. *See* Chapter 175 of the Nevada Revised Statutes. However, we should avoid overturning a long standing decision by judicial fiat, without compelling reason.

---

[1]Over the past decade, Leslie White has testified against at least a dozen California inmates whom he claimed confessed their guilt to him. However, he later disclosed that at least some of the information he passed on to lawmen was nothing but lies. He demonstrated how easy it is for a "snitch" to concoct a false confession simply by using a telephone in the prison chaplain's office. Identifying himself as a bail bondsman, White called the sheriff's document-control center and got an accused murderer's case number and date of arrest. Then, he called the district attorney's records bureau, identifying himself as a deputy district attorney to obtain names of witnesses and the prosecutors handling the case. In order to obtain details of the murder, White called the coroner's office and told them he was a police officer.

After he falsely testified about a confession or damaging admission made in jail by the defendant which would be consistent with the facts he had learned, White would receive special privileges, including early release from his frequent prison terms. As a result of White's revelations of fabricated testimony, Los Angeles is having to review more than 130 cases from the past ten years for possible taint. *A Snitch's Story,* Time Magazine, December 12, 1988.

Furthermore, there is some indication that informants are more frequently used when a case is weak, and therefore, the risk of convicting innocent people is increased. *Use of Jailhouse Informers Reviewed in Los Angeles,* New York Times, January 3, 1989. Of the 225 people convicted of murder and other felonies as a result of Mr. White and other jailhouse informers' testimony over the last 10 years in Los Angeles, 30 are on death row. *California Shaken over an Informer,* New York Times, February 16, 1989.