Filed 12/16/13  P. v. Pena CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ANDRE LOZANO PENA,<br><br>    Defendant and Appellant. | 2d Crim. No. B242781<br>(Super. Ct. Nos. 1358850, 1280171)<br>(Santa Barbara County) |

Andre Lozano Pena appeals the judgments entered against him in two related criminal cases.  In case number 1280171 (case 1), appellant pled no contest to assault with a deadly weapon (Pen. Code,[1] § 245, subd. (a)(1)), and admitted inflicting great bodily injury (GBI) on his victim (§ 12022.7, subd. (a)).  Pursuant to a negotiated disposition, he was granted probation and ordered to serve a year in jail.  Following a violation and reinstatement of probation, appellant agreed to admit another violation in exchange for a sentence of four years in state prison, to be stayed pending the completion of probation.  The court accordingly imposed and stayed execution of a four-year prison sentence, consisting of the low term of two years for the assault, plus two years for the GBI enhancement.

_____

[1] All further undesignated statutory references are to the Penal Code.

While appellant was still on probation, he was charged and convicted in case number 1358850 (case 2) of selling methamphetamine (Health & Saf. Code, § 11379, subd. (a)). His conviction in case 1 was alleged as a strike (§ 667, subds. (d)(1), (e)(1)), and the court found that allegation to be true. The court further found that the offense in case 2 amounted to a violation of his probation in case 1.

When the court announced its intent to order execution of the previously stayed sentence in case 1, the prosecutor contended the sentence was unauthorized to the extent it included a two-year term for the GBI enhancement, rather than the three-year term provided by statute. (§ 12022.7, subd. (a).) The prosecutor asked the court to correct the error by imposing a three-year term for the GBI enhancement along with the two-year low term for the substantive offense, for a total term of five years. Appellant did not dispute that the error had to be corrected, but urged the court to do so by imposing the high term of four years for the substantive offense and striking or staying punishment on the GBI enhancement. The court then sentenced appellant to a five-year term as requested by the prosecution. In case 2, appellant was sentenced to a two-year prison term, to be served consecutive to the sentence imposed in case 1.

Appellant contends the court was bound by the agreement that he receive a four-year prison sentence. We agree. Because the court could have lawfully imposed a four-year sentence by imposing the four-year upper term and striking punishment for the GBI enhancement, the aggregate sentence was lawful and could not be increased. The court was also bound by the fact that the four-year sentence was an express term and condition of appellant's plea agreement. We shall order the sentence modified accordingly.[2]

---

[2] Appellant also contends, and the People concede, that (1) the $1,000 restitution fine and $1,000 parole revocation restitution fine imposed under sections 1202.4, subdivision (b), and 1202.45, must each be reduced to $600; (2) the $30 criminal conviction assessment imposed under Government Code section 70373 must be stricken; and (3) the $40 court operations assessment imposed under section 1465.8, subdivision (a)(1), must be reduced to $20. We shall accordingly order the judgment modified to correct these errors. Pursuant to the People's unopposed request, we also direct the court to modify the judgment to reflect that the $600 probation revocation fine imposed under section 1202.44 is now due.

In case 2, appellant claims the prosecutor committed misconduct by "compelling" a defense witness to invoke her right against self-incrimination during cross-examination. He also faults the court for accepting the invocation and excluding the witness's testimony. There is no merit in these claims. Accordingly, we affirm the judgment.

STATEMENT OF FACTS

*Case 1*

Christopher Williams was watching television in his home when appellant entered the house and repeatedly struck Williams with a fire poker. Williams required medical treatment for his injuries, which included a laceration on his head, scratches on his arm and chin, and swelling on his shoulders and left eye.

*Case 2*

On February 25, 2012, Santa Maria Police Officer Nathan Totorica approached Isaac Moreno in a Motel 6 parking lot and asked what he was doing. Moreno said he was waiting for a friend who was at the front office checking in. After speaking to Moreno for about 15 minutes, Officer Totorica made contact with Joe Valdez, who exhibited symptoms of being under the influence of a central nervous system (CNS) stimulant. The officer searched Valdez and found a bindle containing 0.92 grams of methamphetamine. Valdez told the officer he bought the drugs for $30 from a Hispanic man named "Andre" in room 263. Valdez said a woman was also in the room and that they had more methamphetamine.

While Officer Totorica was in the motel lobby seeking information about who was occupying room 263, another officer saw appellant come out of the room carrying a laptop computer and other electronic equipment. The officer yelled for appellant to stop, but appellant did not do so. A subsequent chase ended when appellant was apprehended at an adjacent property.

In the meantime, Officer Totorica stopped Jessica Perales as she was leaving room 263. Perales initially identified herself as Elizabeth Mungia. She appeared nervous and had a quiver in her voice. The officer searched Perales and found a bindle

3

containing 3.39 grams of methamphetamine in her pocket, which amounted to about 34 individual doses. In the room, the police found a torn piece of paper that matched the packaging of the bindle found in Valdez's pocket.

Officer Totorica evaluated appellant and Perales at the police station and determined they were both under the influence of a CNS stimulant. A total of $460 in cash was recovered from appellant during the booking process.

When Valdez was interviewed at the police station, he said that the glass pipe he used to smoke methamphetamine belonged to appellant and that he had purchased drugs from him on two prior occasions. Valdez had called appellant earlier that day and told him he wanted to purchase $30 worth of methamphetamine. Appellant told him to come to room 263 at Motel 6. When Valdez arrived, the drugs had already been packaged so he gave appellant $30 and left.

At trial, Valdez testified that he came to see appellant, whom he had met at a nightclub, because appellant had a laptop for sale and Valdez wanted help downloading anti-virus software. When Valdez went to the room, a woman answered the door. Valdez and the woman smoked methamphetamine for about 10 to 15 minutes while Valdez was waiting for appellant to get off the phone. Valdez eventually told appellant he would call him later and left. With regard to the methamphetamine found in his possession, appellant initially claimed that he purchased the drugs three days earlier from someone on the street. He later testified he had taken the drugs from appellant's room without paying for them.

On March 19, 2012, appellant made a phone call from jail to someone he addressed as "uncle." Appellant said he had learned that "Joe" told the police he bought drugs from appellant in his motel room. Appellant also said he was "looking at [] a lot of freakin' time" and added that "supposedly Jessica copped to everything and . . . that means that maybe you know that the charges should be dropped . . . ."

In his defense, appellant presented the testimony of a neighbor who offered that she had hired him in the past to fix her computer. At the request of both parties, the jury was informed Perales pled no contest to possessing methamphetamine for sale, in

4

violation of Health and Safety Code section 11378, and was sentenced for the crime on April 12, 2012.

Perales was also called to testify for the defense. After she invoked her right against self-incrimination on cross-examination, all of her testimony was stricken.

DISCUSSION

*Unauthorized Sentence*

Appellant contends the court erred in imposing a five-year prison sentence in case 1. He claims the court violated double jeopardy and violated the terms of his plea agreement by imposing anything other than the previously imposed four-year sentence. The People assert that appellant has waived or forfeited his claim by failing to raise it below. They further contend that the court properly imposed a five-year sentence in the exercise of its duty to correct an unauthorized sentence.

Appellant asked the court to sentence him to a four-year term, and explained how the court could legally do so. Although he did not expressly refer to his double jeopardy rights, constitutional claims may be raised for the first time on appeal "when 'the new arguments do not invoke facts or legal standards different from those the trial court itself was asked to apply, but merely assert that the trial court's act or omission, insofar as wrong for the reasons actually presented to the court, had the additional legal consequence of violating the Constitution.' [Citations.]" (*People v. Tully* (2012) 54 Cal.4th 952, 979-980.) Moreover, "fashioning a sentence in a manner which is unauthorized by law exceeds the jurisdiction of the court and may be the subject of later review even though no objection was made in the trial court." (*People v. Mustafaa* (1994) 22 Cal.App.4th 1305, 1311 (*Mustafaa*); see also *People v. Smith* (2001) 24 Cal.4th 849, 852 ["obvious legal errors at sentencing that are correctable without referring to factual findings in the record or remanding for further findings are not waivable"].)

Appellant properly seeks appellate relief from an unauthorized sentence. Moreover, his five-year sentence is unauthorized in two significant respects. "On revocation of probation, if the court previously had imposed sentence, the sentencing judge must order that exact sentence into effect [citations] . . . ." (*People v. Howard*

5

(1997) 16 Cal.4th 1081, 1088; see also *People v. Ramirez* (2008) 159 Cal.App.4th 1412, 1423-1425.) In this case, the court purported to impose a different sentence pursuant to its authority to correct an unauthorized sentence. In general, an unauthorized sentence is "'. . . subject to being set aside judicially and is no bar to the imposition of a proper judgment thereafter, even though it is more severe than the original unauthorized pronouncement.'" (*Mustafaa, supra*, 22 Cal.App.4th at p. 1311; see also *People v. Reyes* (1989) 212 Cal.App.3d 852, 857.) The rule against double jeopardy provides, however, that a more severe sentence cannot be imposed if the original sentence was a "legal aggregate sentence" that was merely "fashion[ed] in an unauthorized manner." (*Mustafaa*, at pp. 1311-1312; *People v. Torres* (2008) 163 Cal.App.4th 1420, 1432-1433.)

Here, the aggregate four-year sentence could have been achieved by imposing the upper term of four years for the assault and striking punishment for the GBI enhancement. (Cal. Rules of Court, rule 4.420(c); *People v. Coleman* (1989) 48 Cal.3d 112, 164-165.) Because the original sentence was a "legal aggregate sentence" and yet "fashion[ed] in an unauthorized manner" (*Mustafaa, supra*, 22 Cal.App.4th at pp. 1311-1312), appellant's double jeopardy rights protect him from a more severe sentence.

The People's citation to *In re Renfrow* (2008) 164 Cal.App.4th 1251, is unavailing. The ruling in that case was based on the proposition that "'[t]he failure to impose or strike an enhancement is a legally unauthorized sentence subject to correction' [citation], even if the correction results in a harsher punishment [citations]." (*Id.* at p. 1254.) Because the court had not imposed or stricken the enhancement, the defendant's double jeopardy rights were not implicated. Here, by contrast, "the rule against double jeopardy applies" because "the court imposed a legal aggregate sentence, only fashioning it in an unauthorized manner." (*Mustafaa, supra*, 22 Cal.App.4th at pp. 1311-1312.)

*Renfrow* is also inapposite in that there was no claim the court had violated the defendant's right to be sentenced in accordance with the terms of a plea agreement. Here, the court had no authority to deviate from the plea agreement, which expressly

6

provided for a stayed sentence of four years. Having accepted that agreement, the court had no authority to deviate from it. "Where [a] plea is accepted by the prosecuting attorney in open court and is approved by the court, the defendant, except as otherwise provided in this section, cannot be sentenced on the plea to a punishment more severe than that specified in the plea and the court may not proceed as to the plea other than as specified in the plea." (§ 1192.5.) "[A] negotiated plea agreement is in the nature of a contract. Thus, when the trial court accepts it, the agreement is binding on the parties and the court. [Citations.]" (*People v. Martin* (2010) 51 Cal.4th 75, 80; see also *People v. Superior Court (Gifford)* (1997) 53 Cal.App.4th 1333, 1337 ["'. . . While no bargain or agreement can divest the court of the sentencing discretion it inherently possesses [citations], a judge who has accepted a plea bargain is bound to impose a sentence within the limits of that bargain . . .'"].)

Appellant's four-year sentence is an express term of the plea agreement. Although the court's computation of the sentence is unlawful, the aggregate sentence is not. In order to preserve appellant's double jeopardy rights and honor the terms of his plea agreement, we shall order the judgment in case 1 modified to reflect a sentence of four years, consisting of the upper term on the substantive offense with the punishment for the GBI enhancement stricken.

### *Prosecutorial Misconduct and Exclusion of Testimony*

Appellant contends the prosecutor committed misconduct in case 2 by "compelling" Perales to invoke her right against self-incrimination. He further claims that the court erred in accepting Perales's invocation, and in thereafter striking all of her testimony. Neither claim has merit.

On direct examination, Perales testified that she and appellant were staying in room 263 when Valdez came to look at a laptop for sale. After Valdez arrived, Perales, appellant, and Valdez smoked some of Perales's methamphetamine. Valdez asked Perales for some of her methamphetamine, so she gave him some of her stash by wrapping it in a ripped off piece of paper from the room. Valdez paid her $20 for the drugs. Perales admitted she was lying when she previously told the prosecutor and

7

appellant's attorney that Valdez merely came to the room to look at a computer and did not purchase any drugs.

On cross-examination, the prosecutor asked Perales whether she recalled answering questions under oath when she entered her no contest plea. Perales answered in the affirmative. She also recalled being "asked under oath if [she] had any information that would be helpful to [appellant's] defense," and admitted having answered that question in the negative. The prosecutor then asked, "Was it a lie when you said you didn't have any information helpful to his defense under oath?" After Perales responded, "I'm just stating what happened," the court intervened.

Outside the jury's presence, the court told Perales that her testimony "has triggered the need to have you consult with an attorney . . . regarding [] the taking of your plea, having been sworn and giving a statement under penalty of perjury that you had no helpful information to [appellant]." After consulting with her attorney, Perales refused to answer any more questions at counsel's advice and invoked her right against self-incrimination.

The court subsequently indicated it had reviewed the transcript of Perales's plea colloquy. The transcript revealed that Perales had stated under penalty of perjury that she had read the police reports and was aware of the evidence and information the prosecution had against her and appellant. Perales went on to state that she had no information or knowledge that would be helpful to appellant; in making this statement, she meant that she had no information or evidence that appellant was not guilty. The court explained that it had advised Perales to consult with counsel because she had given testimony that "could be viewed as being helpful to [appellant]." The court went on to conclude that it had been put "in a position of having to strike the entirety of her testimony, both direct and cross." In the presence of the jury, the court then struck Perales's testimony and instructed the jury to disregard it.

Appellant claims the prosecutor violated his right to present a defense by entering into a plea agreement with Perales that effectively prevented her from testifying for the defense, and then asking her improper questions that caused her to invoke her

8

Fifth Amendment rights during cross-examination. This claim was not raised below, so it is forfeited. In any event, it fails on the merits.

A defendant's right to present a defense includes the right to present the testimony of witnesses and compel their attendance at trial. (*People v. Treadway* (2010) 182 Cal.App.4th 562, 567.) Misconduct occurs in this context when a prosecutor uses improper tactics to intimidate a witness, including threats of arrest, prosecution, or other adverse consequences. (*In re Martin* (1987) 44 Cal.3d 1, 30-31.) To establish a violation of these rights, a defendant must demonstrate among other things that "a governmental agent performed acts entirely unnecessary to the proper performance of his or her duties which were of such a nature as to persuade a willing witness not to testify." (*People v. Schroeder* (1991) 227 Cal.App.3d 784, 788.)

Appellant fails to demonstrate that the prosecutor improperly interfered with his right to present a defense. In asserting otherwise, appellant relies on cases in which prosecutors entered plea agreements with codefendants that were conditioned on a promise not to testify at the defendant's trial. (*People v. Treadway, supra,* 182 Cal.App.4th at p. 564; *People v. Woods* (2004) 120 Cal.App.4th 929, 934.) No such condition is at issue here. According to appellant, "the instant case is worse" because "Perales's plea actually left open the possibility that she could testify, but only to the extent it wasn't 'helpful' to appellant. . . . There is no legitimate purpose to a plea agreement that limits a critical witness's ability to testify truthfully only if it benefits the prosecution." Case law contradicts this proposition. "'What is improper . . . is not that what is expected from the informant's testimony . . . will be favorable to the People's case, but that the testimony must be confined to a predetermined formulation or rendered acceptable only if it produces a given result, that is to say, a conviction.'" (*People v. Garrison* (1989) 47 Cal.3d 746, 769, quoting *People v. Meza* (1981) 116 Cal.App.3d 988, 994; see also *Meza, supra*, at p. 994 ["[I]f we assume [the witness testifying pursuant to a plea bargain] would receive the benefit of his bargain only if his testimony was beneficial or valuable to the prosecution, that alone is not such an inducement as to place him under the kind of compulsion condemned in the cases cited, since the very nature of the

9

agreement described contemplates that something of assistance to the prosecution will be forthcoming from the [witness]. [E]lse what would be its purpose so far as the former is concerned"].) Although Perales's plea agreement was conditioned on her statement that she did not possess information that might be helpful to the defense, it did not limit her from offering any form of testimony. The presumption is that her sworn statement was truthful. This may have effectively compelled her to testify truthfully at appellant's trial, but such an assurance is not an improper condition of a plea agreement. (*People v. Homick* (2012) 55 Cal.4th 816, 862-863.) Appellant also fails to demonstrate that the prosecutor asked improper questions of Perales. Her prior representation that she did not possess any information that appellant was not guilty was relevant to the jury's assessment of her credibility. To the extent appellant contends the court "compounded" the prosecutorial misconduct by giving admonishments that "drove Perales off the stand," we conclude the admonishments were a proper exercise of the court's duty to ensure that Perales was fully apprised of her rights against self-incrimination. (See *People v. Berry* (1991) 230 Cal.App.3d 1449, 1453.) Appellant's claim that the court had no duty to admonish Perales because she had already incriminated herself finds no support in the law.

Appellant fares no better in contending the court erred in accepting Perales's invocation or striking all of her testimony. These claims are forfeited because they were not raised below. In any event, answering the prosecutor's questions regarding the truthfulness of her prior sworn statement inevitably would have resulted in the sort of "injurious disclosure" the privilege against self-incrimination is intended to protect against. (See *People v. Seijas* (2005) 36 Cal.4th 291, 304-305.) Moreover, Perales invoked her Fifth Amendment rights on the advice of counsel. Because Perales's invocation precluded the prosecution from cross-examining her on testimony she gave that directly related to the jury's determination of appellant's guilt, the court did not abuse its discretion in striking her entire testimony rather than pursuing a less severe remedy. (See *People v. Seminoff* (2008) 159 Cal.App.4th 518, 527.)

DISPOSITION

In case number 1280171, the matter is remanded for resentencing. On remand, the court shall impose a four-year term, consisting of the upper term for the substantive offense, with the punishment for the GBI enhancement stricken as contemplated in rule 4.420(c) of the California Rules of Court. In accordance with section 1385, subdivision (a), the trial court shall set forth the reasons for striking punishment for the GBI enhancement in an order entered upon the minutes. The court shall further modify the judgment as follows: (1) the restitution fine imposed under section 1202.4, subdivision (b), is reduced from $1,000 to $600; (2) the parole revocation fine imposed under section 1202.45, is reduced from $1,000 to $600; (3) the $30 criminal conviction assessment imposed under Government Code section 70373, is stricken; (4) the court operations assessment imposed under section 1465.8, subd. (a)(1), is reduced from $40 to $20; and (5) the $600 probation revocation fine imposed under section 1202.44 is now due. The superior court clerk shall prepare an amended abstract of judgment and forward a copy to the Department of Corrections and Rehabilitation. As so modified, the judgments are affirmed.

NOT TO BE PUBLISHED.


PERREN, J.


We concur:



GILBERT, P. J.



YEGAN, J.


11

Patricia Kelly, Judge

Superior Court County of Santa Barbara

_____

Mark R. Feeser, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Eric E. Reynolds, William H. Shin, Deputy Attorneys General, for Plaintiff and Respondent.