Filed 8/11/14  P. v. Garcia-Munguia CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>BRYAN JULIUS GARCIA-MUNGUIA,<br><br>    Defendant and Appellant. | B243213<br><br>(Los Angeles County<br>Super. Ct. No. LA062209)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on July 10, 2014, be modified as follows:

1.  On page 8, in the first full paragraph, the first sentence beginning "Finally, even if the trial court" is deleted and the following is inserted in its place:

> Finally, even if the trial court abused its discretion by excluding Lara's proffered testimony, the jury heard appellant's counsel's remarks during opening statement that appellant had schizophrenia, heard the court's later instruction that what attorneys say in opening statements was not evidence and opening statements were meant to be a preview of the evidence, and heard evidence concerning appellant's mental health problem and schizophrenia.

2.  On page 13, the first two sentences are deleted and the following is inserted in their place:

> In sum, in the argument section of his opening brief, appellant asserts the prosecutor argued certain matters that appellant places in quotation marks, but appellant frequently fails to quote accurately the prosecutor's arguments, if any.

Moreover, to the extent appellant suggests the matters within those quotation marks are merely his characterization of prosecutorial arguments more fully recited in appellant's statement of the relevant facts in his opening brief, we have considered that recitation and the prosecutor's arguments as set forth in the record. The prosecutor's comments were fair comment on the evidence (see *Hill, supra*, 17 Cal.4th at p. 819), except perhaps to the extent the court instructed the jury to disregard prosecutorial comments (see fn. 6, *ante*), and those instructions cured any harm.

There is no change in the judgment.

Appellant's petition for rehearing is denied.

Filed 7/10/14  P. v. Garcia-Munguia CA2/3 (unmodified version)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B243213 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LA062209) |
| v. | |
| BRYAN JULIUS GARCIA-MUNGUIA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gregory Dohi, Judge.  Affirmed.

Corona & Peabody and Jennifer L. Peabody, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Shawn McGahey Webb and Ryan M. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Bryan Julius Garcia-Munguia appeals from the judgment entered following his conviction by jury on count 1 – first degree murder (Pen. Code, § 187) with personal use of a dangerous and deadly weapon (Pen. Code, § 12022, subd. (b)(1)). The court sentenced appellant to prison for 26 years to life. We affirm.

## FACTUAL SUMMARY

1. *People's Evidence.*

Viewed in accordance with the usual rules on appeal (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the evidence, the sufficiency of which is undisputed, established appellant lived with his mother, Saida Munguia (Saida), the decedent, in a Reseda condominium. When appellant was 15 years old, he developed epilepsy and his relationship with Saida began to deteriorate. Appellant was defiant, disrespectful, and assaultive towards Saida.[1] On May 31, 2009, Saida left the residence to go on an outing and appellant stayed home because he was angry. Saida eventually returned and,

---

[1] A neighbor overheard appellant and Saida arguing, and appellant yelling a couple of times to Saida, "Bitch, I'm going to kill you." On April 12, 2008, Saida and her boyfriend, Elan Palmer, removed appellant from the residence. Appellant, angry, said he would return with friends and kill Palmer, and appellant broke a window at the residence. Sometime after April 2008, appellant battered Saida. In about March 2009, appellant returned from Honduras and was more violent than ever. On May 28, 2009, appellant was defiantly playing loud music in the residence. Saida turned off the electricity in the residence. Appellant called Saida a bitch and later told her it was "time to kill." Saida summoned police and, when they arrived, appellant was extremely angry and expressed hatred. On May 29, 2009, appellant called 911, claimed Saida was a roommate who was stealing from him, and asked for police assistance to recover his property. Appellant did not tell the 911 operator Saida was appellant's mother. On May 29, 2009, Saida, crying, told Adam Padavic, a friend, she was making plans to have appellant removed from the residence to get him help. On May 30, 2009, Saida took appellant to Daniel's Place, a facility in Santa Monica where he could receive therapy. Appellant was scheduled to return there the following Monday. On some date prior to May 31, 2009, Saida called 911 and said she had a mentally ill son, appellant, who was becoming aggressive. Saida said appellant was "[a]pparently bipolar, schizophrenic, epilepsy." Palmer testified he had met one of appellant's psychiatrists. Renia Tong, Saida's mother, testified that in 2009, appellant was taken to the hospital and was very nervous and acting strangely.

2

sometime between 8:00 p.m. on May 31, 2009, and the morning of June 1, 2009, appellant killed her.

In particular, appellant, using a knife, stabbed Saida 14 times, i.e., seven times to her head or face, once on the left side of her neck, three times on her left shoulder, twice on the left side of her chest, and once on her left arm. One stab wound to her face, the stab wound to her neck, and a stab wound to her chest were each fatal. In addition to the 14 stab wounds, Saida had multiple defensive stab wounds on her hands. Saida's body was discovered in appellant's bedroom.

About 8:00 p.m. on June 1, 2009, Saida's family was outside near the residence when appellant approached. Appellant saw the family and tried to flee, but Masiel Munguia (Masiel), Saida's sister, eventually confronted him. Masiel asked appellant, "Why did you take her away from us?" and appellant replied he did not do it, and Mexicans with black hoodies did it.

About June 1, 2009, Los Angeles Police Detective Jason LeDuff conducted a videotaped interview of appellant following his arrest. Appellant initially denied killing Saida but ultimately told LeDuff the following. Appellant's mother brought food to appellant's room, then yelled she was appellant's mother. Appellant stabbed Saida in her neck and chest. He stabbed her because he felt angry. Appellant was angry at Saida "[f]or being stabbed." Appellant wanted Saida to die because she was suffering, and appellant tried to finish off "what they had started." LeDuff asked, "What who had started?" and appellant replied, "Whoever had left her there [¶] . . . [¶] stabbed." Appellant told LeDuff, "whoever did this must have a reason for doing this" and "must have some sort of criminal insanity background." Appellant also told LeDuff, "I am a sane person."

2. *Defense Evidence*.

In defense, Erica Ullmann testified as follows. Ullmann was a counselor at Daniel's Place. The clinic was for people "with mental health issues which is bipolar, schizophrenia, schizoaffective disorder, depression, anxiety, O.C.D., . . ." The clinic

3

dealt with people who had psychotic issues and people who merely had anger management issues. Ullmann obtained intake information from clients, and the information was written in a report that was placed in a file. The information included what the client provided as the client's diagnosis. In 2009, appellant and his mother came to the clinic because he was experiencing mental health issues. Appellant told Ullmann he had anger issues and was depressed.

Los Angeles Police Officer Luis Farfan testified that on May 28, 2009, he responded to a call about loud music at Saida's residence. Appellant told Farfan that Saida was not appellant's mother, and that Saida stole appellant's original mother.

## ISSUES

Appellant claims (1) the trial court erroneously excluded expert testimony from Raul Lara, (2) the trial court erroneously excluded expert testimony from Dr. Timothy Collister, (3) the prosecutor committed misconduct during jury argument, and (4) cumulative prejudicial error occurred.

## DISCUSSION

1. *The Trial Court Properly Excluded Alleged Expert Opinion Testimony From Raul Lara.*

   a. *Pertinent Facts.*

During opening statement, appellant's counsel commented this incident began when appellant "was diagnosed with a mental health problem with an issue schizophrenia." (*Sic*.) After 16 of the 18 People's witnesses testified at trial, appellant, on March 19, 2012, outside the presence of the jury, indicated as follows. Appellant wanted to present testimony from Raul Lara, appellant's marriage and family therapist (MFT), that appellant had symptoms consistent with schizophrenia.[2] Appellant's counsel

---

[2] Appellant indicated a transcript reflected a police interview of Lara, and appellant wanted Lara to testify to the same information the transcript reflected Lara told police. It appears the parties informally agreed the trial court could review the transcript (court's exh. No. 4) and the court read it.

4

argued the testimony was relevant only to the issue of whether appellant could "form the intent to commit first-degree murder."

On March 20, 2012, the court noted Lara never performed a systematic analysis of appellant and never wrote a report.[3] The court also noted, ". . . I think the jury by now has got the picture, that there is a history of mental illness to deal with." The court also indicated Lara's statements in court's exhibit No. 4 were "a far cry from some sort of systematic diagnosis." The court ruled Lara lacked a basis to render a diagnosis of schizophrenia, and his opinion lacked sufficient foundation. The court indicated, however, it would permit voir dire of Lara.

During the March 21, 2012 voir dire by appellant's counsel, Lara testified as follows. Lara was a licensed MFT and had a private practice. As an intern therapist, Lara had several jobs, including working with the Los Angeles County Mental Health Department (department). For about two or three years while Lara was an intern, he was a department case manager who worked with perhaps five to eight schizophrenic clients on an ongoing basis. Lara had no special training or skill in that area other than those five or eight clients he saw per year.

As an MFT, Lara mainly dealt with relationship issues. However, he was able to diagnose schizophrenics. Lara testified schizophrenics became paranoid, their speech was fragmented, and they did not make sense. The symptoms Lara was describing pertained to a paranoid schizophrenic.

In perhaps 2005 or 2006, when appellant was about 18 or 19 years old, Lara began seeing appellant and Saida in Lara's office. Lara saw the two more than a dozen times

---

[3]   The court also indicated appellant's proffer of Lara's testimony was a surprise to the court and People. The court quoted a February 21, 2012 exchange during which, after the prosecutor withdrew from consideration two admissibility issues pertaining to mental health evidence, appellant's counsel indicated he did not intend to call a mental health expert at that time. The court, commenting on this exchange, stated, "This smacks of gamesmanship . . . . All we're accomplishing by essentially hiding the ball is causing delay." Appellant's counsel later acknowledged he had not spoken to Lara "until a few minutes ago."

over the years, and saw appellant by himself several times. When Lara talked with appellant, appellant discussed problems he was having with Saida. The following occurred: "Q And . . . you never had one-on-one sessions with the defendant regarding any schizophrenia or anything like that because you felt that that was out of your expertise and someone else needed to have determined that right, doctor? [*Sic*.] [¶] A No, it never – it never came up." Appellant never told Lara appellant was having signs of schizophrenia. In perhaps 2008 or 2009, Lara met with appellant at a restaurant. Appellant exhibited signs of schizophrenia and acted unusually. The last time Lara saw appellant was perhaps in 2008 or 2009.

Lara denied he had records for the period during which he treated appellant. Lara believed treatment started in 2002. Appellant and Saida met Lara on an inconsistent basis. They would perhaps come in one day of the year, then wait another six months before returning. Appellant's counsel asked if Lara had ever diagnosed appellant with any sort of mental illness. Lara replied to the effect he had referred appellant to the department, the department asked Lara for a diagnosis, and Lara told the department "it was a psychotic disorder, but not otherwise specified." Lara never assessed appellant for schizophrenia.

During voir dire, the court asked Lara how long he had worked as a case manager, and Lara replied "about 10 years ago." Lara denied he did specialized study in the field of schizophrenia, and denied he kept up with the literature specific to schizophrenia. Lara never diagnosed anyone with schizophrenia during his practice as an MFT.

Although, as mentioned, Lara testified he met appellant and Saida on an inconsistent basis, Lara also testified he saw appellant perhaps 20 or 25 times over many years, perhaps "six years plus." The following occurred: "The Court: Did you ever examine the defendant, . . . with a mind towards diagnosing him with a DSM IV condition? [¶] The Witness: No, Your Honor. That's why I refer them to the [department] and . . . I think, it was referred from them [the department] -- to UCLA, I'm not sure. [¶] The Court: Beg your pardon? [¶] The Witness: I'm not sure, you know,

6

in that whole thing. [¶] The Court: So would it be fair to say you would not be comfortable rendering that diagnosis and that's why you send it out to other people? [¶] The Witness: Exactly." The court concluded Lara was not qualified to render any diagnosis, he was not an expert in schizophrenia, it would be misleading for him to render an expert opinion, and the court would not allow him to do so.

    b. *Analysis.*

    Appellant claims the trial court erred by excluding Lara's proffered expert opinion testimony.[4] Appellant argues the trial court erred by excluding Lara's proposed testimony appellant exhibited signs of schizophrenia, Lara believed appellant had schizophrenia, Lara diagnosed him as having a psychotic disorder, and Lara referred him for further treatment. We reject appellant's claim.

    The only issue in this case is whether the trial court erred by excluding the proffered testimony from a particular therapist, i.e., Lara. We have recited the pertinent facts and the trial court's reasoning for excluding Lara's proffered testimony. That testimony included Lara's frank admission to the effect he would not be comfortable rendering a diagnosis. The fact some evidence arguably might have supported a different trial court ruling does not render erroneous the court's ruling. In light of the trial court's

---

[4]    "A person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates." (Evid. Code, § 720, subd. (a).) An expert witness may give opinion testimony "[b]ased on matter (including his special knowledge, skill, experience, training, and education) perceived by or personally known to the witness or made known to him at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates, unless an expert is precluded by law from using such matter as a basis for his opinion." (Evid. Code, § 801, subd. (b).) A trial court's determinations a witness qualifies as an expert, and the expert's testimony is properly based, are matters left to the discretion of the trial court and will not be disturbed absent abuse of discretion. (*People v. Jones* (2013) 57 Cal.4th 899, 950-951; *People v. Jones* (2012) 54 Cal.4th 1, 57.) We find trial court error regarding a witness's credentials as an expert only if the evidence shows a witness clearly lacks qualification as an expert. (*People v. Jones*, *supra*, 54 Cal.4th at p. 57.)

reasoning, we conclude the trial court did not abuse its discretion by excluding Lara's proffered testimony on the grounds he was not qualified as an expert and he lacked a proper basis for his opinion. Moreover, the application of the ordinary rules of evidence, as here, did not violate appellant's Fifth, Sixth, or Fourteenth Amendment rights. (Cf. *People v. Boyette* (2002) 29 Cal.4th 381, 427-428 (*Boyette*).)

Finally, even if the trial court abused its discretion by excluding Lara's proffered testimony, the jury heard appellant's counsel's remarks during opening statement that appellant had schizophrenia, and the jury heard evidence concerning appellant's mental health problem and schizophrenia. If Lara had given the proffered testimony, effective cross-examination would have diminished, if not negated, the testimony's value. There was ample evidence that at the time of the killing appellant committed premeditated and deliberate intent-to-kill murder, and the jury found he committed such murder. No prejudicial abuse of discretion occurred. (Cf. *People v. Watson* (1956) 46 Cal.2d 818, 836.)

2. *The Trial Court Properly Excluded Expert Testimony From Dr. Collister*.

a. *Pertinent Facts*.

The record contains a 16-page, undated competency evaluation report (court's exh. No. 2) prepared by Dr. Timothy Collister, a clinical psychologist, reflecting his evaluation of appellant in November 2011 and Collister's opinion appellant was competent to stand trial. The report was admitted into evidence at the December 2, 2011 competency hearing.

On March 21, 2012, after both parties rested, and during discussions concerning jury instructions, appellant suggested he should have introduced evidence of appellant's mental illness. On Thursday, March 22, 2012, the prosecutor represented as follows. Reports by three doctors, including Dr. Sanjay Sahgal and Dr. Collister, had been available to the parties for years prior to trial. Appellant previously had represented that this case was not going to be about appellant's mental health. However, the prosecutor

8

did not object if appellant wanted to reopen to present testimony concerning appellant's mental health at the time of the alleged offense.

Appellant's counsel indicated he wanted to call Collister as an expert to testify appellant's "mental illness affects his . . . ability to form the intent to commit this crime." Collister's proffered testimony was based in part on the competency report.

The court indicated as follows. Ample evidence already had been presented that appellant suffered from delusions or hallucinations and had impulse control problems at the time of the offense, and the proffered evidence was "in many ways redundant given what the jurors already know." During Collister's examination of appellant, appellant made compelled statements to Collister, and those statements would have to be excluded before the proffered testimony could be received.

After the court reviewed Collister's competency report, the court asked if appellant's counsel knew if Collister would be able to testify any time soon. Appellant's counsel replied Collister told him Collister would be unavailable Wednesday, and appellant's counsel believed Wednesday was the only day Collister said he would be unavailable.

The court stated, "This is astonishing to me that this comes up at this late hour. This is something that's a very complicated matter to resolve. There would be, if necessary, all sorts of waivers of privilege that would have to go into this." The court also indicated if Collister testified, it would raise the issue of whether the People could counter with an expert or have appellant examined again.

The court also indicated as follows. The court had no idea when Collister would be available to testify. Collister had evaluated appellant as part of a competency evaluation, not for the completely different purpose of determining what appellant's mental state was at or about the time of the alleged offense. Collister's report was based largely on Sahgal's report, and Sahgal obtained from appellant a number of statements and admissions.

Appellant's counsel indicated the only additional information he had from Collister was his statements to appellant's counsel by email that (1) appellant was suffering from a mental illness at the time of the crime, (2) appellant's history of mental illness caused him to overreact to stress and apprehension, and, (3) because of appellant's mental illness, it was possible he was acting impulsively under the circumstances present at the time of the alleged offense.

The court concluded Collister's proffered testimony would result in extraordinary consumption of time and would add very little to the evidence already presented regarding appellant's impulsivity and whether he was suffering from delusions. The court excluded, under Evidence Code section 352, Collister's proffered testimony.

b. *Analysis*.

Appellant claims the trial court erred by not permitting him to reopen his case to present Collister's proffered testimony. We reject appellant's claim.

Trial courts have broad discretion to reopen a case to allow the introduction of additional evidence (*People v. Goss* (1992) 7 Cal.App.4th 702, 706) and a trial court's denial of a defendant's request to reopen cannot be reversed on appeal unless the trial court abused its discretion. (*People v. Meza* (1981) 116 Cal.App.3d 988, 995.) Moreover, a trial court enjoys broad discretion under Evidence Code section 352 when assessing whether probative value outweighs undue prejudice, confusion, or consumption of time. (*People v. Brown* (2000) 77 Cal.App.4th 1324, 1337.) When ruling on a section 352 motion, a trial court need not expressly weigh prejudice against probative value, or even expressly state it has done so. All that is required is that the record demonstrate the trial court understood and fulfilled its responsibilities under section 352. (*People v. Williams* (1997) 16 Cal.4th 153, 213.)

The pertinent facts reflect the trial court considered appropriate factors when excluding the proffered testimony under Evidence Code section 352. Nothing more was required. Application of the ordinary rules of evidence here did not violate appellant's Fifth, Sixth, or Fourteenth Amendment rights. (Cf. *Boyette*, *supra*, 29 Cal.4th at pp. 427-428.) It follows the court did not abuse its discretion by not reopening the case.

3. *No Prosecutorial Misconduct Occurred During Jury Argument*.

Appellant claims the prosecutor committed misconduct during jury argument.[5] We conclude otherwise. Except as indicated to the contrary below, appellant failed to object on the ground of prosecutorial misconduct and failed to request a jury admonition with respect to the challenged prosecutorial comments, and a jury admonition would have cured any harm. To that extent, appellant waived issues of prosecutorial misconduct. (Cf. *People v. Gionis* (1995) 9 Cal.4th 1196, 1215; *People v. Mincey* (1992) 2 Cal.4th 408, 471.)

As to the merits, appellant argues the prosecutor committed misconduct by making the following alleged comments during jury argument.[6] (Subsequent references to page

---

[5]     A prosecutor violates the Fourteenth Amendment by committing conduct that infects the trial with unfairness to the degree that due process, the defendant's right to a fair trial, is denied. A prosecutor's misconduct that does not render a trial fundamentally unfair may violate state law if it uses deceptive or reprehensible methods to attempt to persuade the court or jury. (*People v. Hill* (1998) 17 Cal.4th 800, 819 (*Hill*).)

[6]     The prosecutor commented (at p. 3379 of the reporter's transcript), "[y]ou'll have the form from Daniel's Place that he himself filled out and wrote or told as they were filling out that he has anger issues and he has depression as his only diagnoses." (*Sic*.) The court then sustained appellant's objection on the ground of improper argument and instructed the jury to disregard the prosecutor's last comment about depression and diagnoses. Appellant also asserts the prosecutor commented (at pp. 3411-3412), appellant's mental defense "doesn't cut the mustard" because "he hasn't pled not guilty by reason of insanity." However, the prosecutor commented to the effect the only fact appellant's counsel cited to the jury was there was something wrong with appellant and everybody knew he was not normal. The prosecutor then made the challenged comments, but the court sustained appellant's objection on the ground of improper argument and instructed the jury to ignore the prosecutor's last "statement." We assume appellant did not waive prosecutorial misconduct issues as to the above challenged

11

numbers in parentheses are to the reporter's transcript). Appellant asserts the prosecutor commented (at p. 3386), "it was 'speculation of what disease he had.' " (*Sic*.) However, what the prosecutor said was, "It isn't up to our speculation of what disease [he might] have had and what family members thought they had diagnosed him. We're not medical doctors."

Appellant asserts the prosecutor commented (at p. 3386), "appellant's only mental disease was 'conjured up in his head' after his arrest." However, what the prosecutor said was, "[appellant] says something very telling to the detectives. [¶] He says it could have been someone who was criminally insane. . . . And why does he say that? [¶] Think about what he's being accused of, where he was going the next day and what defenses he may have conjured up in his head."

Appellant asserts the prosecutor commented (at pp. 3411-3412), "there was no evidence that appellant actually had a mental disease." However, the prosecutor did not make that comment. Appellant asserts the prosecutor commented (at pp. 3413-3414), "the only evidence of a mental disease was counsel's arguments, which were speculation." However, the prosecutor commented, concerning the issue of whether appellant had a mental condition, the jury should consider what appellant's trial counsel was saying "versus the proof that you've heard," and the jury could decide what appellant's mental state was, "not by what we say is speculation, not by what the lawyer's interpretation of what may have been, quote, wrong with [appellant], but with [appellant's] actions." (*Sic*.) Appellant asserts the prosecutor commented (at p. 3413) no doctor testified appellant had a mental condition, and appellant complains the prosecutor commented appellant had a "selective mental defense" because, he expressed remorse for killing Saida.

---

comments, but even if we assume those comments were improper, the court's instructions cured any harm. (Cf. *People v. Prysock* (1982) 127 Cal.App.3d 972, 998.)

In sum, appellant frequently fails to recite accurately the prosecutor's comments, if any. Moreover, the prosecutor's comments were fair comment on the evidence (see *Hill, supra,* 17 Cal.4th at p. 819), except perhaps to the extent the court instructed the jury to disregard prosecutorial comments (see fn. 6, *ante*), and those instructions cured any harm. This is not a case such as *People v. Daggett* (1990) 225 Cal.App.3d 751, 757-758, in which the prosecutor, during jury argument, improperly took advantage of erroneous trial court evidentiary rulings. There were no erroneous evidentiary rulings in this case. No prejudicial prosecutorial misconduct occurred in this case during jury argument, nor did the prosecutor during jury argument violate appellant's Fifth, Sixth, and/or Fourteenth Amendment rights.[7]

## *DISPOSITION*

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



KITCHING, J.

We concur:


KLEIN, P. J.



ALDRICH, J.

---

[7]    In light of our above analysis, appellant was not denied effective assistance of counsel to the extent his trial counsel failed to object to the alleged misconduct. We reject appellant's additional claim the trial court committed prejudicial cumulative error.

13